[No. 1742.]

THE STATE OF NEVADA, ex rel. JOHN B. GLEE-
SON, Relator, *v.* JUMBO EXTENSION MINING
COMPANY, a Corporation, T. G. LOCKHART,
EDWARD S. VAN DYCK, MRS. T. G. LOCK-
HART, C. B. HIGGINSON, and J. L. TOWLEY,
Respondents.

1. Mandamus—Application—Practice. On filing an application for *man-damus*, the general practice of the supreme court is to issue an order to respondents to show cause why the relief asked should not be granted.

2. Same—Proper Method of Raising Issues. While there is little difference whether the issues on a *mandamus* proceeding are raised by motion to quash the citation or by demurrer, it is the better practice to raise any objection by demurrer or answer.

3. Same—Separate Demurrers—Propriety. Where an affidavit for *man-damus* was entitled against a corporation and individuals, who were its directors, separate demurrers filed by the individual defendants and respondents are proper.

4. Same—Grounds—Absence of Other Legal Remedy. *Mandamus* to compel the issuance and delivery of the stock of a corporation will not lie unless the stock sought to be recovered has some pecuniary or special value peculiar in itself, differing from that of other like shares, or unless the shares are detained and the control of some corporation is at issue, and by securing the shares in question the party applying for a writ would obtain control; and in such cases it must affirmatively appear from the petition that the relator has a clear legal right to their possession, and that he has no plain, speedy, and adequate remedy at law.

Mandamus by the State, on the relation of John B. Gleeson, against the Jumbo Extension Mining Company, and others. **Petition dismissed.**

The facts sufficiently appear in the opinion.

*Lewers & Huskey* and *McNutt & Hannon*, for Relator:

I. It is conceded *in limine* that the writ of mandate may not properly issue where there is an adequate remedy through the ordinary proceedings of law. Indeed, the writ was contrived to afford relief where such ordinary proceedings were not adequate to do so. It is further conceded that, while, as observed by Cook, there is an irreconcilable conflict on the question, the weight of authority seems to be that courts will not issue the writ of mandate to compel a corporation to

transfer upon its books, at the action of the purchaser, shares purchased from a former owner. But it should be observed that in many of such cases, and this is true of several of the cases cited by respondents' counsel, other facts supervened which rendered the use of the mandate improper. We cite as an instance of this sort *The State of Nevada ex rel. Elliott* v. *Guerrero, et al.,* 12 Nev. 105. In that case this court says: "*Mandamus* ought not to be issued to compel the trustees to issue certain certificates of stock to relator where it appears from the petition that the stock is also claimed by other persons not parties to the proceeding before the court." Respondents had answered setting forth that others, third persons, were the owners of the stock and that the relator was not. It is true that the court placed its decision upon the ground also that the relator had an adequate remedy at law; that, having failed to show any peculiar value in the stock, the transfer of which he sought, the remedy by action against the corporation for damages was adequate.

II. Before passing from the category of cases which relate to the transfer of stock from the seller to the purchaser by the corporation upon its books, we desire to submit some observations in respect of the reasons upon which these decisions appear to proceed. These reasons, as stated both by judges and text-writers, are principally two: First, that an adequate remedy at law exists in an action against the corporation for damages as for conversion; second, that, as long as other shares of the corporation's stock of the same dignity or character are extant and may be purchased in the open market, there is no occasion to award the remedy. The latter of these reasons has not seemed at all satisfactory to us, unless, indeed, the party seeking the remedy by *mandamus* is shown to have purchased the stock by an executory contract; that is, that he has but contracted to purchase, but has not paid for them. For, if he has paid for them it might well be that he would have nothing left with which to purchase on the market other shares, although they might be of equal value and dignity, at any price. To be sure, if he had not paid for them, and the corporation refused to transfer them, he might buy other shares of like

quality. But what assurance would he have that the corporation will transfer these?

III. Counsel for the respondents fail to show how the relator in the present action could obtain adequate relief. What is the adequate, specific, and legal remedy to which he would have this court relegate the relator? If the facts stated in the petition are true, and the demurrer admits their truth, will an action against the respondent corporations afford such relief? If it be true that the mining claims and mines owned by these corporations are of great, but as yet unknown, value, and if fluctuations are constantly occurring in the market quotations of their shares of stock, and if, as is fairly well known to be the fact, these shares may grow into many times their present value, dependent upon the management of the corporation, the diligence or want of it, with which the work of its development is prosecuted, will this court, by the denial of this writ, say to him that his adventure shall terminate now; that he shall not be admitted into the membership of the corporation, and take part in the future management and prosecution of its development, and share, as was contemplated in the very nature of his contract, in the augmenting profits of the enterprise, but he shall stop short now, and content himself with bringing an action against the corporation for the conversion of his stock some months ago when the officers of said corporations refused to issue to him the proper certificates which would clothe him with the proper powers of a shareholder, and enable him to participate in the management of the property—his property?

*Key Pittman*, and *Watson & Van Dyck*, for Respondents:

I. As to the briefs on said demurrers and motions: Attorneys for relator, in a half-hearted way, attempt to urge a reason, different from the reason which we contended for, in *State ex rel. Elliott* v. *Guerrero*, 12 Nev. 105, and *Durham* v. *Monumental S. M. Co.*, 9 Or. 43, by quoting that part of the opinion which deals with the doubtful ownership of the stock, delivery of which was sought. There is no doubt, but that two things must appear before *mandamus* will issue, namely: (1) It must appear from the petition or from the

trial that the plaintiff and relator has an undisputed right
to the property involved.   (2) That he has no other plain,
speedy, and adequate remedy at law.   In both of the cases
last referred to the court doubted whether or not the plaintiff
and relator had shown a clear right to the property involved,
and therefore commented upon such question, but an exami-
nation of each decision shows that the court, while mention-
ing the other points, rendered its decision in each case
entirely on the question that the plaintiff and relator
therein had a plain, speedy, and adequate remedy at law.
The language of the opinions in both cases has been quoted
fully in defendants' opening brief, and will not, therefore,
be quoted again.   Attorneys for plaintiff and relator attack
*Kimball* v. *Union Water Company* by stating that the Supreme
Court of California, many years before said case was decided,
had in another case held a contrary view.   In the event of
conflict between decisions of the same court, we are of the
belief that the latter decision controls.   We are surprised at
the interpretation which attorneys for plaintiff and relator
have given the case of *Slemmons* v. *Thompson*, 31 Or. 514.
It is true that in that case a writ of *mandamus* was granted,
but, in granting such writ, the court quoted with approval
*Durham* v. *Monumental S. M. Co.*, 9 Or. 43, and carefully and
clearly distinguished the facts in the two cases.   Counsel for
defendants in their opening brief went so fully into this dis-
tinction that it seems unnecessary to explain it again.   In
said case, however, the court stated that plaintiff and relator
did not have an adequate remedy at law, for the sole reason
that it appeared from the petition that the defendant had
sold and disposed of all its property for the sum of ten dol-
lars and that said defendant had neither money nor property
and was therefore insolvent; and that for such reason any
judgment obtained by plaintiff and relator would be unavail-
ing.   The learned attorneys have simply quoted a general
proposition of law laid down in that case, and, through lack
of careful consideration of said case, have failed to set out
its distinguishing features.

II.   The rule, as laid down in the cases cited by counsel
for defendant, was affirmed by the Supreme Court of the

State of Nevada, at the September term, 1907, in *State ex rel. Botsford* v. *F. P. Langan, District Judge*, 29 Nev. 459. Judge Sweeney, in delivering the opinion of the court, says: "As the motion to dismiss the appeal raises the same point, to wit, as to whether or not an appeal which is granted at this time in the case of *Van Riper et al.* v. *Botsford et al., infra*, lies from an order setting aside or vacating a default entered by the clerk, as is desired and attempted to be accomplished through the means of the extraordinary writ of *mandamus*, applied for by the relator, it is plain that the relator has a plain, speedy, and adequate remedy at law, which is now effective in his favor, and for this reason the application for a writ of *mandamus* is hereby ordered dismissed."

By the Court, Sweeney, J.:

This is an application for a writ of *mandamus* by the relator, John B. Gleeson, against the Jumbo Extension Mining Company, *et al.*, for the purpose of having issued and delivered to him 7,500 shares of Jumbo Extension Mining Company stock and 5,625 shares of Vernal Mining Company stock of Goldfield.

Relator alleges in his petition for the writ that: "On or about May 10, 1904, the defendant corporation, the Jumbo Extension Mining Company, was organized under the laws of the Territory of Arizona, by the name of 'Jumbo & Vernal Extension Mining Co,' with a capital stock of 1,250,000 shares, of the par value of $1 per share, and having its principal places of business in the City of Phœnix, Arizona, and at Tonopah, in the State of Nevada, and at Goldfield, in the State of Nevada. Whereupon, on or about said 10th day of May, 1904, it transferred to R. A. Martin, C. B. Higginson, and J. T. Jones each 200,000 shares of its said capital stock, in consideration for certain mining claims transferred by them severally to said corporation. The other and remaining 500,000 shares of such stock were deposited in the company's treasury to be sold thereafter for development purposes. Afterwards, on or about the 21st day of June, 1904, said corporation sold to this plaintiff and relator 7,500

shares of its said capital stock out of the treasury of the said company for the sum of $300 then and there paid to said corporation by this plaintiff and relator. At the time of the purchase of said stock by the plaintiff and relator the said defendant corporation, its officers and agents claimed and represented, and the fact was, as plaintiff and relator was informed and believed, that the said company had not as yet procured its blank certificates of stock, and, because thereof, could not and did not issue a certificate in the usual form for said 7,500 shares so bought by him. But the said corporation through its proper officers did issue to the plaintiff and relator the following instrument, to wit: 'Goldfield, Nevada, June 21, 1904. This is to certify that, in consideration of J. B. Gleeson having this day paid into the treasury of the Jumbo and Vernal Extension Mining Company the sum of three hundred dollars ($300), he, the said Gleeson, is entitled to have issued to him seven thousand and five hundred (7,500) shares of the capital stock of said company held in reserve as treasury stock. Jumbo & Vernal Extension Mining Company, by H. B. Lind, Its Secretary.' That later, as plaintiff and relator is informed and believes and therefore alleges, the said corporation procured such certificates of stock. Whereupon and continuously thence forward hitherto this plaintiff and relator became entitled to have the said 7,500 shares of stock issued to him, and this plaintiff and relator has from time to time demanded of the said Jumbo Extension Mining Company, and of its proper officers, that a certificate of such stock should be issued to him, but to issue the same the said corporation and its officers have declined and refused. On information and belief, plaintiff and relator alleges that there are in the treasury of the said company shares of its stock sufficient to enable the said company to perform its contract with the plaintiff and relator."

It is further alleged by reason of a consolidation of certain mining claims with the Jumbo & Vernal Extension Mining Company, and by reason of the alleged ownership of 7,500 shares of the Jumbo Extension & Vernal Mining Company as above set forth, the relator became entitled to 5,625 shares of the stock of the Vernal Mining Company of Goldfield

issued to him.   Relator further alleges that none of the stock which it is alleged he purchased for said $300 has ever been delivered to him, and that the corporation and officers of said corporation, above-named defendants, refuse to issue and deliver the same to him.   Upon the filing of this petition, this court granted an order to show cause to the above-named defendants commanding them to appear on a day certain, and show cause, if any they have, why this court should not on this said petition, and at such time issue a peremptory writ of mandate commanding the defendants to issue to said relator 7,500 shares of the capital stock of the Jumbo Extension Mining Company and 5,625 shares of the capital stock of the Vernal Mining Company of Goldfield as claimed by relator in his petition.   In due time defendants appeared and interposed a motion to quash the citation and also a demurrer, both of which set forth identically the same grounds.

If the motion to quash the citation were granted or denied, its effect would be the same as that sought to be obtained if the demurrer were sustained or overruled.   This motion to quash the citation for a writ of *mandamus* and the demurrer interposed upon the same grounds is confessed to have been done by counsel for defendants because of a doubt in his mind as to which procedure was the proper one. In view of the fact that the court on the filing of relator's petition issued an order to respondents to show cause why the relief sought in the petition for writ of *mandamus* should not be granted, which is the practice now generally followed by this court in *mandamus* proceedings, defendants were given an opportunity on said date commanded in the citation to raise any objections they desired and chose to interpose their objections both by demurrer and motion to quash the citation.   While there is little difference in the way these issues are raised, we think the better practice in the future to be pursued in similar cases is to raise any objections to the petition by demurrer or answer.

Defendants set forth in their demurrer and motion to quash the citation for writ of *mandamus* their reasons why said peremptory writ should not issue, as follows:

"(1) That said affidavit or petition of said relator upon

which the alternative writ herein issued and wherein the relator seeks a peremptory writ of *mandamus* from this court does not state facts sufficient to entitle said relator to the relief in said petition prayed for, or to the peremptory writ of *mandamus* referred to in the alternative *mandamus* or citation herein issued.

"(2) That it does not appear from said affidavit or petition that said relator has no plain, speedy, and adequate remedy at law.

"(3) That it does appear from said affidavit or petition of said relator that he has a plain, speedy, and adequate remedy at law by an action against said defendant corporation for the value of the stock claimed by said relator. It further appears from said affidavit or petition that said relator has a plain, speedy, and adequate remedy in equity by an action against said defendant corporation for a specific performance of his said alleged contract.

"(4) It affirmatively appears from said affidavit or petition of said relator that said defendant corporation is solvent, and is able to respond in damages for any judgment said relator may obtain against said corporation for the value of said stock so alleged to be wrongfully withheld from said relator by said defendant corporation and its officers.

"(5) It affirmatively appears from said affidavit or petition that said defendant corporation has ample of said stock in its possession to satisfy any judgment said relator might obtain in a court of equity for the specific performance of said alleged contract and order to deliver said stock.

"(6) That the remedy sought under the statement of facts in said affidavit or petition of said relator does not require the compelling of the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled.

"(7) It does not appear from said affidavit or petition that the issuance of said stock was ever authorized by the board of directors of said defendant corporation, or that the execution of said agreement set out in plaintiff and relator's petition, dated June 21, 1904, and signed by H. B. Lind as

secretary of the defendant corporation, Jumbo & Vernal Extension Mining Company, was ever authorized by said defendant corporation, or ever ratified thereafter by the same; and it does not appear that the president or secretary or directors of said defendant corporation have any authority to issue to said relator any stock of said defendant corporation, or any other corporation upon the surrender of said instrument set up in said petition, dated June 21, 1904.

"(8) It does not appear from said affidavit or petition that said Albert S. Watson, trustee, has ever executed his said trust or delivered said stock of said Vernal Mining Company of Goldfield into the possession of said Jumbo Extension Mining Company.

"(9) That the court has no jurisdiction over the subject-matter of said petition, or to issue the writ therein prayed for, for the reason that it does not appear from said petition that said plaintiff and relator has no plain, speedy, or adequate remedy at law."

Before considering the objections raised as to the issuance of the peremptory writ by the demurrer of the respondents, we believe it advisable to first pass upon a question raised in relator's brief wherein he raised the following objection to our considering the demurrer or motion to quash as interposed by the respondents.

In his opening brief relator asserts: "We respectfully submit that no question is or can be properly raised by the separate and independent demurrers and motions filed by T. G. Lockhart; by Edward S. Van Dyck; by Mrs. T. G. Lockhart, C. B. Higginson, J. L. Towley, and the Jumbo Extension Company; and by the Vernal Mining Company. These seem to have been filed by the above persons in their individual capacities, on the theory that the action is against the respondents as individuals, and not as a board of directors. There is no showing that any one of these numerous motions and demurrers are the motions or demurrers of the board of directors as such. In fact, it clearly appears that they are not, but are the pleadings of the individuals named. Therefore, it necessarily follows that there is no appearance of the board of directors of either company. This court

cannot consider the personal and individual appearance of the above individuals."

We do not consider there is any merit in the objection raised by relator to preclude this court from considering the points raised in respondent's demurrer. The demurrer and motion complained of are entitled in every respect in the same way as relator's petition for a writ of *mandamus*, and have the same entitlement as the order of this court issued to said defendants commanding them to appear. It is evident that, if the objections raised by relator have any merit or force, their petition should be dismissed. We believe for the purposes of the petition and the order as issued that all parties are now before the court, and that the objections raised by respondents have been properly submitted. This court has repeatedly and recently held (*State ex rel. Botsford* v. *District Judge*, 29 Nev. 459) in line with principles so clearly and tersely expressed by High on Extraordinary Legal Remedies, here quoted and supported by innumerable authorities and text-writers when *mandamus* ought and will issue, and that it will not issue where the petitioner has a plain, speedy, and adequate remedy at law.

"The writ of *mandamus* being justly regarded as one of the highest writs known to our system of jurisprudence, it issues only where there is a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and where there is no other specific and adequate legal remedy. Since the object of a *mandamus* is not to supersede legal remedies, but rather to supply the want of them, two prerequisites must exist to warrant a court in granting this extraordinary remedy: First, it must be shown that the relator has a clear, legal right to the performance of a particular act or duty at the hands of the respondent; and, second, it must appear that the law affords no other adequate or specific remedy to secure the enforcement of the right and the performance of the duty which it is sought to coerce. The test to be applied, therefore, in determining upon the right to relief by *mandamus*, is to inquire whether the party aggrieved has a clear, legal right, and whether he has any other adequate remedy, since the writ belongs only to those

who have legal rights to enforce, who find themselves without an appropriate legal remedy." "From the origin, nature, and purpose of the writ, * * * it has been shown to be an extraordinary remedy, applicable only in cases where the usual and accustomed modes of procedure and forms of remedy are powerless to afford relief.   It follows, therefore, from the principles already established, as well as from the very nature and purpose of the remedy itself, that the writ never lies when the party aggrieved has another adequate remedy at law, by action or otherwise, through which he may attain the same result which he seeks by *mandamus*.   This principle is of the highest importance in all cases where it is necessary to determine upon the propriety of interference by *mandamus*, and the rule will be found to be firmly established as one of the fundamental principles underlying the entire jurisdiction, that the existence of another specific, legal remedy, fully adequate to afford redress to the party aggrieved, presents a complete bar to relief by the extraordinary aid of a *mandamus*.   The rule has been recognized from the · earliest times, and it has been applied throughout the entire growth and development of the law of *mandamus*.   Indeed, it results from the very nature and origin of the writ, which was introduced to supplement the existing jurisdiction of the courts, and to afford relief in extraordinary cases where the law presented no adequate remedy.   The existence or nonexistence of an adequate and specific remedy at law in the ordinary forms of legal procedure is therefore one of the first questions to be determined in all applications for the writ of *mandamus*, and whenever it is found that such remedy exists, and that it is open to the party aggrieved, the courts uniformly refuse to interfere by the exercise of their extraordinary jurisdiction." (High on Extraordinary Legal Remedies, 3d ed. 9, 10, 15.)

In the light of these fundamental principles we believe,· for the purpose of disposing of this case, all questions presented and objections raised can be properly resolved into the following query, and answered, to wit:   Does the petition as presented state facts sufficient to warrant this court in issuing a peremptory writ of *mandamus* to compel

the issuance and delivery of stock in a corporation? An examination of the petition of relator reveals that it is nowhere alleged therein, nor is it claimed or maintained, that these 7,500 shares of Jumbo Extension stock and 5,625 shares of Vernal Mining Company stock have any peculiar or especial or greater value in themselves over any like number of shares of stock in either of said companies; nor is it anywhere alleged that any stock in either of said corporations, so long as it is of the same number of shares, would not satisfy petitioner's demand; nor is it alleged or maintained that the defendants are insolvent, nor that they are incapable of delivering the number of shares of stock claimed; nor is it alleged that they are unable to respond in damages for a judgment for the stock should a judgment be awarded against defendants in a proper action for the recovery of said stock or damages for the conversion of same.

The petition further fails to disclose that the board of directors of said corporation authorized the secretary of said corporation to sell said stock, or to enter into any agreement with said relator to sell said stock for the amount alleged to have been paid.

The supreme court of this state has held in *Ex rel. Curtis v. McCullough*, 3 Nev. 202, that, before a writ of *mandamus* will issue, the right of relator must appear plain and beyond dispute.

High on Extraordinary Legal Remedies, 3d ed., sec. 313, p. 286, says: "In conformity with the general principle that *mandamus* will not lie when other adequate and specific remedy may be had at law, the courts refuse to lend their interference by this extraordinary writ for the purpose of compelling the transfer to a purchaser of shares of capital stock upon the books of an incorporated company, or to compel a company to issue certificates of stock. In all such cases full and complete satisfaction, equivalent to specific relief, may be had by an ordinary action at law to recover the value of the stock, and the existence of such other remedy is a complete bar to the exercise of the jurisdiction by *mandamus* when it does not appear that the particular stock in question possesses any especial value over other stock of the

corporation. And upon similar grounds, the writ will be denied when sought to compel the officers of a corporation to issue shares of its capital stock to subscribers who are entitled thereto."

Bliss on the Law of Pleading, sec. 444, p. 685, says: "*Mandamus* is never the remedy to enforce the performance of duties growing out of contractual rights." The same author,. at section 446, page 685, says: "The remedy by *mandamus* will never be granted where the usual and ordinary modes of proceeding afford adequate redress to the party."

Cook on Corporations, vol. 2, p. 864, sec. 390, says: "The authorities are in irreconcilable conflict on the question whether *mandamus* lies to compel a corporation to allow a registry on its books of a transfer of stock. The weight of authority holds very clearly that *mandamus* will not lie. This rule is based largely on the historical origin of the writ of *mandamus*, and on the theory that the stock of a private corporation has no peculiar value, and may be readily obtained in open market or fully compensated for in damages." And at section 392: "An action at law for damages is an old and well-established remedy of a stockholder who has applied to the corporation for a registry of a transfer and has been refused."

The Supreme Court of Oregon in the case of *Durham* v. *Monumental Silver Mining Company*, 9 Or. 41, held that, "where the plaintiff claimed to be the owner of certain shares in a mining corporation by purchase at a sheriff's sale which the secretary refused to transfer on the stock book, *mandamus* was not the proper remedy, as plaintiff had an adequate remedy at law by an action against the corporation for the value of the stock claimed"; and by reason of this remedy, they had a plain, speedy, and adequate remedy in the ordinary course of law, and denied the application for a writ of *mandamus*. The same court in *Slemons* v. *Thompson*, 23 Or. 215, 31 Pac. 514, quoted with approval and distinguished the principle laid down in *Durham* v. *Monumental Silver Mining Company*.

The Supreme Court of California in the case of *Kimball et*

*al.* v. *Union Water Company et al.*, 44 Cal. 175, 13 Am. Rep. 157, held that: "It has been so frequently decided that a party entitled to stock in a private corporation has an action in damages against the corporation for the refusal of its officers to transfer the stock to him on the company's books that it must be considered as a settled principle of law, and that *mandamus* will not lie to compel the transfer." (*King* v. *Bank of England*, 2 Doug. 526; *Shipley* v. *Mechanics' Bank*, 10 Johns. [N. Y.] 484; *Wilkinson* v. *Providence Bank*, 3 R. I. 22; *Ex parte Fireman's Ins. Co.*, 6 Hill [N. Y.] 243; *American Asylum* v. *Phœnix Bank*, 4 Conn. 172, 10 Am. Dec. 112; *Sargent* v. *Franklin Ins. Co.*, 8 Pick. [Mass.] 90, 19 Am. Dec. 306.)

The Supreme Court of Missouri in the case of *City of St. Louis* v. *Bessel*, 46 Mo. 157, in an application for a writ of *mandamus* for the transfer of stock on its books, said: "It is very clear that relator misconceives his remedy, and that he may obtain adequate and ample redress without resorting to a proceeding by *mandamus*. If he has a good title to the stock, he can recover the market value in an ordinary action. It is the uniform and current rule of the courts that, when a corporation improperly refuses to transfer stock on its books, the party injured has an ample remedy by action, and therefore a *mandamus* to compel such transfer will not lie."

The Supreme Court of Nevada in the case of *State of Nevada ex rel. A. B. Elliott, Relator,* v. *Biaggio Guerrero et al., Respondents,* 12 Nev. 107, in an action similar to this, held: "We are of the opinion that *mandamus* is not the proper remedy, for the reason that relator has a plain, speedy, and adequate remedy at law by an action against the corporation for the value of the stock claimed."

From an examination of the authorities as to when *mandamus* will lie to compel the issuance and delivery of stock of a corporation, I am of the opinion that it will never lie unless the stock sought to be recovered has some pecuniary or special value peculiar in itself and of a different value from any like number of shares sought to be recovered, or unless, where shares of stock are detained and the control of some corporation is at issue, and by the securing of the

same the party applying for a writ of mandate would obtain control, and in all such exceptional cases it must affirmatively appear from the petition that the relator has a clear, legal right to the possession of the same, and that he has no plain, speedy, and adequate remedy at law.

The present case does not disclose any such state of circumstances existing as to warrant this court in granting relator's petition for a peremptory writ of mandate; and said petition is dismissed.