[No. 1822]

## FRANK OLIVER, APPELLANT, *v.* THEODORE LITTLE, RESPONDENT.

1. SPECIFIC PERFORMANCE — SERVICES — PAYMENT — CONTRACT FOR DELIVERY OF STOCK.

   An alleged contract to pay for plaintiff's services in the stock of a corporation, without designating the number of shares, was not proper subject for specific performance.

2. SPECIFIC PERFORMANCE—RELIEF—ACTION—PLEADING.

   Where a complaint to enforce specific performance of a contract to pay for complainant's services by delivery of corporate stock alleged that the services were performed for defendant, at his request, and were of the value of $25,000, it stated a cause of action on a *quantum meruit*, on which plaintiff could recover, though he was not entitled to specific performance.

3. BROKERS—SERVICES—COMMISSIONS—REASONABLE VALUE.

   Where a broker's services in selling mining stock were reasonably worth 10 per cent, such percentage should be computed on the value of the stock at the time the services were rendered.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *J. P. O'Brien*, Judge.

Action by Frank Oliver against Theodore Little. From a judgment in favor of defendant, plaintiff appeals. **Reversed and remanded.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Henry M. Farnam* and *Thompson, Morehouse & Thompson*, for Appellant.

*Rufus C. Thayer*, for Respondent.

By the Court, TALBOT, J.:

This action is based on a complaint which alleges that the defendant "hired and employed" the plaintiff to render and perform for defendant certain services in connection with a mining right held by him; that the plaintiff performed the services; that the defendant promised and agreed to pay the plaintiff "his reasonable compensation for said services in the capital stock of a corporation which should thereafter be organized, * * * which said compensation was worth and of the reasonable value of 25,000 shares of the capital stock of said corporation to be issued to the defendant as trustee for the plaintiff; * * * that in pursuance of said agree-

ment, employment, and understanding the defendant caused to be duly incorporated * * * a corporation * * * called the Little-Florence Mining Company, with a capital stock of $1,000,000, divided into 1,000,000 shares of $1 each, and thereafter caused to be issued to the defendant * * * 300,000 shares of said capital stock, in which was included therein the 25,000 shares hereinabove referred to; * * * that the services performed as aforesaid were reasonably worth said 25,000 shares of stock, and at the time of the issuance thereof as aforesaid were, and ever since have been, and still are, of the reasonable value of $25,000." The prayer of the complaint demanded, among other things: "* * * That said defendant as said trustee be by said judgment of the court ordered to specifically perform said trust, and assign and deliver in good and sufficient form said 25,000 shares of capital stock as above set forth; * * * that alternatively if said defendant has heretofore sold, assigned, and delivered said 25,000 shares, judgment be entered againt said defendant for the sum of $25,000, * * * and for such other and further relief as to the court shall seem just and equitable to the plaintiff herein."

The evidence is undisputed that the defendant held a lease on a block of mining ground in Goldfield; that he went to plaintiff and told him that he had stopped work and must make some other arrangement, and that he would be glad if the plaintiff would give him any assistance he could in finding some one to finance the lease; that plaintiff sent the defendant to Mr. Truitt and also to Dr. Robinson, and assisted defendant in obtaining from Dr. Robinson an agreement by which Dr. Robinson was to work the lease and to give one-half the proceeds to the defendant, and after more delay and dispute a second agreement, under which the Little-Florence Mining Company was incorporated for 1,000,000 shares with 400,000 placed in the treasury and 300,000 set over to the defendant.

The parties substantially agree in their testimony that at the time of the conclusion of the negotiations Dr. Robinson said to plaintiff in effect: "We will take care of you," and the plaintiff and Dr. Robinson testified that the defendant

answered: "Yes, certainly," but in this regard the defendant stated on the stand: "At that time, after we had concluded our negotiations and the matter was wound up, Dr. Robinson got up and said he felt very much pleased with what Mr. Oliver had done, and said, 'We are going to do something for him, aren't we, Mr. Little?' I didn't feel as he did. I didn't feel that I had anything—I had surrendered a better and taken a poorer agreement. I didn't feel generous or like volunteering anything. Mr. Oliver didn't ask me if I would give anything. Dr. Robinson simply said: 'We are going to do it.' I didn't say, 'We are going to do anything.' I expressed gratitude for Mr. Oliver's services in general. I didn't feel that he had assisted me in that part of the deal." Dr. Robinson testified that previously he went to see the defendant for the particular purpose, and told him he would like to have some understanding about his paying Mr. Oliver, as Mr. Oliver had been the cause of their getting together; that he told the defendant that he wanted to know if he was going to take care of Mr. Oliver, and the defendant answered, "I am." Then Dr. Robinson's testimony continued:

Q. Did he agree to take care of Mr. Oliver? A. Yes, sir.

Q. What method of payment was provided for in the understanding you had with him? A. Stock payment.

Q. Was it agreed that he was to be paid out of stock he was to receive from this deal? A. As soon as we struck ore; he was to be taken care of if we struck ore.

Q. Out of this 300,000? A. Yes, sir.

Q. Did you afterwards strike ore? A. We did.

Q. In large quantities? A. Yes, sir.

Q. High grade? A. Yes, sir. * * *

Q. Was it a requirement on your part, before entering into the agreement, that he should take care of Mr. Oliver? A. That was my understanding of it.

Q. Was it agreed that he should pay him out of the stock he was to receive from this Little-Florence Mining Company? A. It was.

That plaintiff's assistance rendered at the request of the defendant brought the parties together, and led to the financing of the lease through Dr. Robinson, is not disputed, and

for this reason the conflict in the testimony as to whether the defendant "agreed to take care of the plaintiff" by making payment in stock if they found ore need not be considered as controlling the case.

There is no evidence, allegation, or claim on the part of the plaintiff that the defendant agreed to compensate the plaintiff with 25,000 or any specified number of shares of the stock. Plaintiff seeks to recover the stock as being held in trust for him, and there is no pretense that there was any agreement for this or any other number of shares. He has proceeded on the theory that if the defendant agreed to pay for his services in stock without any number of shares being mentioned, he could recover such a number as would be a reasonable compensation. If the defendant by written agreement at the time had promised to deliver to the plaintiff 25,000 shares upon the finding of ore or on a given date, and upon the arrival of the contingency had refused to deliver the stock, the plaintiff would have been unable to recover it, and still less so in this case, when it is not even claimed that the defendant agreed to deliver any specified number of shares. If such an agreement as plaintiff claims were made, it would be too indefinite to be enforced. The recent cases of *State* v. *Jumbo Ext. M. Co.*, 30 Nev. 192, and *Turley* v. *Thomas*, 31 Nev. 181, in which we considered this question at length, are conclusive that shares of stock cannot be recovered in an action for specific performance when they are without any peculiar or unusual value and the plaintiff has a remedy at law.

Although the prayer of the complaint asks for equitable relief, and the plaintiff sought it at the trial, the allegations of the complaint that the services were performed for the defendant at his request, and were of the value of $25,000, states a better cause of action at law, and warrants a recovery for the services on a *quantum meruit*. The defendant filed a brief in the district court citing a number of cases holding that recovery cannot be had on an implied contract when an express one is alleged. A contrary and more equitable rule prevails in this and some of the other states. As said in *Burgess* v. *Helm*, 24 Nev. 249: " 'Under an allegation of a contract to pay a specified rate of compensation plaintiff may

prove a promise to pay what the services were really worth, or an implied promise to pay the usual compensation.' (Abbott's Trial Ev. 367, and cases cited.)" (*Livingston* v. *Wagner*, 23 Nev. 57.)   By way of admission it is said in the brief of respondent: "A considerable part of appellant's brief is devoted to showing by authority what would have been really conceded, namely, where an answer is put in, the court is not limited by the prayer of the complaint in the granting of relief."

The district court in a carefully prepared opinion properly held that the plaintiff could not recover the stock, but apparently overlooked or ignored the question as to whether he was nevertheless entitled to the value of the services, which it is conceded he rendered, or assumed that compensation for them could not be recovered under the complaint.   Several brokers testified for plaintiff that the usual commission for selling stock in Goldfield was 10 per cent.   It was also testified that the value of the stock of the Little-Florence Mining Company was 5 cents a share when the first 100,000 of the treasury shares were placed, shortly after the rendition of the plaintiff's services, and that the stock was worth $1 or more per share at the time the suit was brought.   The plaintiff sought to recover 25,000 shares or their enhanced value, amounting to $25,000, when 10 per cent of the 300,000 shares which the defendant received in the company organized with 1,000,000 shares, and based on the lease interest which he held, would amount to 30,000 shares, 25,000 of these at the time of, or directly after the rendition of, the services were worth only $1,250, which as the evidence now stands is apparently all he could recover on a 10 per cent basis.   Plaintiff is entitled upon an implied contract only to such percentage or compensation as may be considered fair, based on the value of the property at the time the services were rendered.

For these reasons the judgment of the district court is reversed, and the case is remanded for a new trial.

ON PETITION FOR REHEARING

*PER CURIAM:*

The petition for rehearing is denied.