[No. 1884]

THE STATE OF NEVADA, EX REL. R. C. MOORE, PETITIONER, *v.* MANHATTAN VERDE COMPANY, A CORPORATION, AND R. C. DUNLAP, ITS PRESIDENT, RESPONDENTS.

1. MINES AND MINERALS—MINING CORPORATIONS—ISSUANCE OF STOCK—STAMPING—STATUTES—CONSTRUCTION—"TREASURY STOCK"—"PROMOTION STOCK."

   As used in the act of March 5, 1909 (Stats. 1909, c. 56), regulating the issuance by mining corporations of treasury and promotion stock, and requiring the stamping of certificates therefor, the words "treasury stock" mean stock set aside for the actual development of the property, while "promotion stock" is that issued to those who may originally own the mining ground or valuable rights connected therewith in consideration of their deeding the same to the mining company, or such stock as is issued to promoters for incorporating the company.

2. MINES AND MINERALS—MINING CORPORATIONS—ISSUANCE OF STOCK—STAMPING—STATUTES.

   The act of March 5, 1909 (Stats. 1909, c. 56), requiring the stamping of certificates issued by mining companies for treasury and promotion stock, did not apply to stock issued prior to April 15, 1909, when such provisions went into effect.

APPLICATION by the State, on the relation of R. C. Moore, for writ of *mandamus* against Manhattan Verde Company and another. **Writ ordered issued in accordance with opinion.**

The facts sufficiently appear in the opinion.

*J. A. Saunders*, for Petitioner:

I. The first question to be determined by this court is, Is *mandamus* the proper remedy? The numerous cases hereto-

fore decided by this court and recently decided apply to the question of this particular remedy in cases compelling officers of corporations to issue stock, whereas in this case it will be noted that respondents offer to issue certificates, but decline and refuse to stamp the same in accordance with the act in question. "The mere fact that an action or proceeding will lie does not necessarily supersede the remedy by *mandamus*. The relator must not only have a specific, adequate and legal remedy, but it must be one competent to afford relief upon the very subject-matter of this application; and if it be doubtful whether such action or proceeding will afford him a complete remedy the writ will issue." (*State* v. *Wright*, 10 Nev. 175.)

II. "If the obligation of the party, against whom *mandamus* is applied for, is clear and undoubted to do the thing required, the fact that an indictment will lie furnishes no objection to the granting of the writ." (*In re Trenton Water Power Company*, 20 N. J. Law, 659.) From these citations it is conclusive that relator's only remedy in this case is *mandamus*.

*McIntosh & Cooke*, for Respondents:

I. The act provides two separate and distinct requirements. Sections 1 and 2 deal solely with the filing of sworn statements, semiannually, and this portion of the act is not in issue here. Sections 3, 4, 5, and 6 are confined solely to the stamping or printing of stock, while sections 7, 8, 9, 10, and 11 incorporate the penal provisions and procedure in the event of noncompliance. In construing the sections involved in the proceeding at bar—namely, sections 3, 4, 5, and 6—that portion of the title of the act referring to those sections gives us the first light on the intention of the legislature. The portion of the title referring to sections 3, 4, 5, and 6 reads as follows: "Regulating the issuance and sale of certain treasury and promotion stock and defining the same for the purposes of this act," evidencing that the legislature had in mind the issuance and sale of the stock itself—and not the exchange of certificates for stock issued and sold prior to the enactment of the law. The title says: "Certain treasury and promotion stock"; going to the body of the act we find what stock the legislature intended to reach.

II.   An examination of the case of *State* v. *Jumbo Extension Mining Company*, 30 Nev. 192, convinces us that the reason for the rule laid down in that case does not exist here.   The distinction °to our minds is clear.   In this case no equitable remedy for specific performance is available to the relator, for no private contract exists between him and respondent company respecting the stamping or printing of the stock in question.   The enforcement of the penalty imposed by the act we concede offers no relief to relator.   No action in damages could compensate relator, for the reason that respondents have tendered and do tender delivery of the certificates and transfer of his stock, declining only to print or stamp such certificates as by relator demanded; and for the further reason that the damages resulting to relator, if any could be shown, are not determinable or computable in dollars and cents within the remotest degree of certainty or exactness.   Further, there is no conversion, theoretical or otherwise, of the stock by the respondent.   The authorities generally hold that where a public right is involved and a penalty imposed, as in this case, *mandamus* is the proper remedy.

By the Court, SWEENEY, J.:

This is an application for a writ of *mandamus* to compel the officers of the Manhattan Verde Company, a corporation, to stamp with the words "treasury stock" or "promotion stock," as the stock may be, certain certificates of stock issued prior to the 15th day of April, 1909, and a certain certificate issued subsequent to the 15th day of April, 1909, by virtue of a certain act of the legislature entitled "An act requiring certain mining corporations to file statements with the county recorders and attorney-general, and to mail copies thereof to stockholders; regulating the issuance and sale of certain treasury and promotion stock and defining the same for the purposes of this act; declaring certain acts to be unlawful; providing penalties for the violation thereof, and other matters relating thereto." (Stats. 1909, p. 62.)

The respondents, it is alleged, have refused to stamp said certificates as required by said act.   The respondents raise no

question in resistance to the issuance of the writ as to the appropriateness of *mandamus* being the proper remedy in this case.    No question thus being raised, and in view of the importance of having this act construed for the benefit of all concerned, and that from the facts alleged this case is readily distinguishable from cases heretofore and recently passed upon by this court, denying the writ of *mandamus* for the reason that there is another adequate and complete remedy at law (*State* v. *Wright*, 10 Nev. 175; *State* v. *Guerrero*, 12 Nev. 106; *Gleeson* v. *Jumbo Extension Mining Company*, 30 Nev. 192; *Turley* v. *Thomas*, 31 Nev. 181), we will construe the act and pass upon the points raised by this proceeding.

Upon the return to the notice of petitioner to show cause why the writ should not issue, respondents allege that they have not and do not refuse to issue stock in lieu of the stock sought to be transferred and reissued, and are willing to transfer and reissue the stock as requested, but refuse to stamp the words "treasury stock" or "promotion stock," as the case may be, upon said certain certificates for the reason, in effect, that the legislature has no authority to change the status of stock previously issued to the enactment of the measure, by requiring the stamping of these words on stock issued by mining companies, and no authority to have said stock stamped as required by said act.

The act, or parts of the act, attempted to be vitiated by this proceeding, is a law passed by the last legislature for the evident purpose of protecting investors in mining stock from buying promotion stock when unscrupulous mining companies and mining promoters advertise that the stock so purchased will be used in the actual development of the property.    The object of the law is a good one, intending, as it does, to protect mining investors who desire to purchase mining stock, and to apprise them of the character of stock they are purchasing, and to prevent deceitful mining promoters and mining companies from foistering promotion stock upon innocent investors under the pretext that the money derived thereby will be used for the actual development of the property.    "Treasury stock" is generally understood to mean in this mining country,

and the legislature intended to mean when it referred to "treasury stock" in said act, such stock as is set aside for the actual development of the property.

In other words, "treasury stock," to the investors in mining stock, means, and would indicate, that the proceeds from the sale of the stock so purchased will be used in the actual development of the mining ground of the mining company selling the stock. "Promotion stock" is such stock as is issued to those who may originally own the mining ground or valuable rights connected therewith, in consideration of their deeding the same to the mining company when the company is incorporated; or it may mean such stock as is issued to promoters, or those in some way interested in the company, for incorporating the company, or for services rendered in launching or promoting the welfare of the company, such as advancing the fees for incorporating, attorney's fees, surveying, advertising, etc.

We do not wish to be understood as conveying the impression that "promotion stock" may not be legitimately earned and rightfully issued, nor that when so rightfully earned and issued to those who are legitimately entitled to the same, that such stock is not of as much value as any other share of stock issued for other purposes, unless for some special reason it may be so declared by the owners thereof, or made so especially by the directors of the mining company at the time of its issuance.

The evident intent of the legislature, in the enactment of the law under discussion, was to have all stock which is to be issued for development purposes to be marked as "treasury stock," and such stock as otherwise issued to the owners or promoters of mining companies, and the proceeds of which are not to be used for the purpose of actually developing the property, to be stamped "promotion stock."

We do not believe it was intended by the legislature, in enacting the law in question, that any stock issued prior to the 15th day of April, 1909 (the time specified in the act when this provision was to take effect), when presented for transfer was to be marked as either "treasury stock" or "promotion stock." Whether the legislature would have authority

to change the status of stock issued prior to the passage of the act, or to penalize the action of the officers of any mining corporation for an offense committed prior to the enactment of the law, we need not determine.    As we construe the act in question, it was never intended to apply to stock issued prior to its passage.

We believe it was the intention of the legislature, as we now construe the law, to mean that no stock issued prior to the time specified in the act for the enforcement of these provisions, when presented to the officers of the company for transfer, need be stamped, but may be issued the same as it was prior to the time specified for the enforcement of the law in question; but any mining stock issued, sold, or transferred, which was issued, sold, or transferred subsequent to the time of the enforcement of the provisions of the act in question, such stock must be stamped in accordance with the provisions of the act, as either "promotion stock" or "treasury stock," as the stock may be.

The application for a writ of *mandamus* to compel, the respondents to stamp the certificates of stock issued prior to the time of the enforcement of the act of March 5, 1909, as either "promotion stock" or "treasury stock," in view of the fact that these certificates of stock were issued prior to the date of enforcement of the law in question, is denied. The writ will issue, however, to compel the respondents to stamp the certificate of stock, presented for stamping, issued subsequent to the time of the enforcement of the provisions of the act in question either as "promotion" or "treasury" stock as the stock may be.

It is so ordered.