[No. 30991. Department One. December 23, 1949.]

ARTHUR H. HEDERMAN *et al., Appellants,* v. MAXINE E. GEORGE, *as Administratrix, Respondent.*[1]

*Geo. A. Meagher,* for appellants.

*Little, Burgunder & Smith,* for respondent.

[1]Reported in 212 P. (2d) 841.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action seeking to make the distribution of mining stock in the estate of James Eldon George, deceased, subject to the right of the plaintiffs to exercise options to buy, given by the decedent.

James Eldon George and his brother Frank had a lease on some mining property which they were promoting. They met with financial difficulties, and Charley Woodis and associates bought them out. The purchasers took an assignment of the lease and incorporated the Gregor Mines, Inc. The corporation was capitalized at fifty thousand dollars, with five million shares of stock at one cent a share. As part of the transaction, the incorporators issued 68,750 shares to each of the George brothers, together with shares issued to other men who had worked the mine for the brothers. This issue of stock represented 220,000 shares, which were placed in escrow with Mr. Woodis, as trustee, and were not to be released without permission of the state director of licenses.

Six or seven permits to sell treasury stock have been issued to the company by the director of licenses. The first permit was for two cents a share; the next ten cents; some at twenty-five cents, and some at fifty cents. Before each permit was issued, it was necessary that the company represent to the state the number of shares of stock being held in escrow, and in addition, a representative of the department examined the company's books from time to time.

J. E. George, subsequent to the assignment of the lease, being in need of money, obtained one hundred dollars from Ross Schmelke, giving him a promissory note for one hundred dollars due in three years. On the back of the note was the following:

"In consideration of One ($1.00) dollar, and the loan of One Hundred ($100.00) dollars as evidenced by this note, I J. E. George do hereby give Ross Schmelke, an option to buy Two Thousand (2000.) shares of stock in the Gregory Mines in escrow to be issued by J. E. George, said option to be excercised within sixty (60) days after said stock is released from escrow by the cancellation of this note and

interest thereon in full payment of said two thousand (2000.) shares of stock in the Gregory mine.

.J. E. GEORGE [signed]"

He obtained five hundred dollars from Arthur R. Hederman and, by a similar document, gave him an option for ten thousand shares. He obtained two hundred dollars from H. E. Haworth and assigned to him his right to four thousand shares.

Later, Mr. George was accidentally killed, and his widow was appointed administratrix of his estate. His 68,750 shares were inventoried as part of the assets of the estate. Claims were filed by Schmelke, Hederman, and Haworth, claiming the right to exercise their options to purchase, which claims were rejected by the administratrix. This action was then commenced, alleging the above transactions and praying that any distribution of the stock of decedent be made subject to the rights of the plaintiffs to exercise their options, together with any other relief the court might deem right.

The trial court found that James Eldon George, during his lifetime, was the owner of 68,750 shares of stock of Gregor Mines, Inc., which, together with other stock, were deposited with the secretary of the company, to be held by him until released by the department of licenses of the state of Washington at the conclusion of the financing of the company; that the stock was escrowed by the department as a condition precedent to the issuance of a permit to the company to sell a designated number of shares of its treasury stock for ten cents a share; that, up to the time of trial, the mining company had not completed its financing and the department had not released the pooled stock; that the plaintiffs purchased the stock from the deceased for five cents a share; that they knew that the stock was escrowed under directions of the department and was not subject to be sold or transferred until released by the department.

The court concluded that the transactions were in reality sales of promotion stock belonging to J. E. George and were

in violation of the metalliferous mining securities act of the state of Washington. The action of each of the plaintiffs was dismissed and this appeal follows.

The metalliferous securities act is contained in Rem. Rev. Stat. (Sup.), §§ 5853-31 to 5853-58 [P.P.C. § 339-1 to -23, 338-1 to -15], inclusive. It provides for the regulation and supervision of the issuance and sale of original issues of metalliferous mining securities, requiring the filing of statutory statements for the protection of the public, requiring licenses of underwriters, agents and salesmen, and defining the powers and duties of the director of licenses. Rem. Rev. Stat. (Sup.), § 5853-37, provides:

"All promotion stock of a company engaged or proposing to engage in the metalliferous mining industry shall, during the period in which any public offering of its treasury stock is being made, be pooled in such manner as may be prescribed by the director of licenses to prevent its sale to the public; but the director of licenses may in his discretion release such pooled stock at any time: *Provided,* That private sales of treasury stock, without advertising or general solicitation, by *bona fide* officers of the company to not to exceed twenty-five persons, in which the entire proceeds inure to the benefit of the company, shall not constitute a public offering."

Rem. Rev. Stat. (Sup.), § 5853-41, provides:

"Every person who shall violate or knowingly aid and abet the violation of this act, and every person who fails to perform any act which is herein made his duty to perform, shall be guilty of a gross misdemeanor."

The testimony showed that 55% of the stock of the corporation was issued to Woodis and his associates in payment of the assignment of the lease and option to the Gregor Mines; that, of their 55%, they paid 10%, or 220,000 shares, to the George brothers and their employees; and that the entire 55%, including the 220,000 shares issued to the George brothers and their employees, is all in escrow, subject to the disposition of the department.

In *State ex rel. Moore v. Manhattan Verde Co.,* 32 Nev. 474, 109 Pac. 442, the court was called upon to interpret an

act regulating the issuance and sale of certain treasury and promotion stock. The court said:

"The object of the law is a good one, intending, as it does, to protect mining investors who desire to purchase mining stock, and to apprise them of the character of stock they are purchasing, and to prevent deceitful mining promoters and mining companies from foistering promotion stock upon innocent investors under the pretext that the money derived thereby will be used for the actual development of the property. 'Treasury stock' is generally understood to mean in this mining country, and the legislature intended to mean when it referred to 'treasury stock' in said act, such stock as is set aside for the actual development of the property.

"In other words, 'treasury stock,' to the investors in mining stock, means, and would indicate, that the proceeds from the sale of the stock so purchased will be used in the actual development of the mining ground of the mining company selling the stock. 'Promotion stock' is such stock as is issued to those who may originally own the mining ground or valuable rights connected therewith, in consideration of their deeding the same to the mining company when the company is incorporated; or it may mean such stock as is issued to promoters, or those in some way interested in the company, for incorporating the company, or for services rendered in launching or promoting the welfare of the company, such as advancing the fees for incorporating, attorney's fees, surveying, advertising, etc."

See, also, the definition of promotion stock in 11 Fletcher, Cyclopedia Corporations (Perm. ed.) 48, § 5089.

In the instant case, the George brothers were not promoters of the mining company. However, the stock which was issued to them was part of the "promotion stock" and was so recognized and earmarked by the director of licenses.

■■ Can these contracts be enforced? It is a general rule that where the contract grows immediately out of, and is connected with, an illegal act, a court of justice will not lend its aid to enforce it. *Armstrong v. Toler,* 24 U. S. 115, 6 L. Ed. 468, 11 Wheat. 258. Where a plaintiff, to make a case, must rely upon the illegal contract itself, he cannot recover. The law will aid neither party to an illegal agreement, but will leave the parties where it finds them. *Reed v. Johnson,*

27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404. A contract which is contrary to the terms and policy of an express legislative enactment is illegal and unenforcible. *State v. Northwest Magnesite Co.,* 28 Wn. (2d) 1, 182 P. (2d) 643. In Pomeroy's Specific Performance of Contracts (3d ed.) 651, § 286, the author said:

"Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements."

■ Turning again to the statute, we find that "all promotion stock . . . shall . . . be pooled . . . *to prevent its sale to the public.*" (Italics ours.) The purpose of the act is to protect the public, which is being solicited to buy treasury stock in order to aid in the exploration, development, and equipment of the mining property.

■ Appellants testified that they knew they were dealing in promotion stock; that it was being pooled in escrow during the financing of the company, upon the order of the director of licenses. They knew that it was illegal for them to contract for its purchase while it was being so held. They knew that treasury stock of the corporation was then being offered to the public at ten cents a share; the proceeds thereof to be used in the actual exploration, development, and equipment of the mining property. But, in spite of their knowledge, they sought to circumvent the statute by *contracting to buy promotion stock at five cents a share.* The purpose of the act was to prevent such sales during the period in which a public offering of the treasury stock was being made. The contracts were illegal and will not be enforced by the courts.

We are not unaware that the contracts in question were in the form of options to be exercised after the promotion stock had been released by the director of licenses. It seems to us,

however, that in the light of the metalliferous mining securities act, any attempt to distinguish between a present sale and the type of contract before us would be begging the question. To hold otherwise would be to subvert the entire purpose of that section of the act which seeks to prevent the sale of promotion stock before its release, and would permit, through the medium of so-called "option" contracts, the transfer of and speculation in any or all such stock long before its release by the director of licenses.

■ Appellants contend that the metalliferous securities act (enacted in 1937) is *in para materia* with the securities act as found in chapter 69, p. 207, of the Laws of 1923 (Rem. Rev. Stat., § 5853-1 *et seq.*) and as amended in chapter 124, p. 347, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 5853-2 [P.P.C. § 334-1]). Rem. Rev. Stat. (Sup.), § 5853-2(1) defines the word "company" as including, among others, "all domestic and foreign private corporations." Excepted therefrom are:

"(f) All corporations engaged in the metalliferous mining industry which are duly registered with the Director of Licenses as provided by law: *Provided,* That the provisions of this act shall in all respects apply to resales of metalliferous mining securities. A resale is hereby defined to be a sale in which the issuing company is not a party."

That simply means that a resale of metalliferous mining securities not prevented by law shall come within the provisions of the securities act. It does not apply to promotion stock, which, under the provisions of Rem. Rev. Stat. (Sup.), § 5853-37, is pooled by the director of licenses to prevent its sale during the period in which a public offering of its treasury stock is being made.

The judgment is affirmed.

SIMPSON, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.