# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

IN RE DETENTION OF ) No. 68664-0-I
)
) DIVISION ONE
)
)
LOUIS W. BROCK, ) PUBLISHED OPINION
)
        Respondent. ) FILED: September 2, 2014

SPEARMAN, C.J. — In this case we consider whether a sexually violent predator (SVP) under Chapter 71.09 RCW may waive his or her right to annually petition for unconditional release by written agreement with the State. We conclude that so long as the waiver is shown to be knowing, intelligent and voluntary, a SVP may agree to waive the right to petition for unconditional release. Accordingly, the agreement at issue in this case is lawful and enforceable. We reverse.

## FACTS

In 1991 Louis Brock was committed to the Special Commitment Center (SCC) following a jury determination that he met the definition of a SVP[1] under chapter 71.09 RCW.[2] In November 2007, Brock filed a motion for a new trial on

---

[1] "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility. RCW 71.09.020(18).

[2] For a brief summary of Brock's criminal history, see Taggart v. State, 118 Wn.2d 195, 199-201, 822 P.2d 243 (1992).

whether he should be unconditionally released from the confinement. The trial court granted the motion on February 28, 2008. At Brock's new trial, which began in March 2010, the State offered testimony from Dr. Paul Spizman, an evaluator at the SCC. He testified that because Brock suffered from a mental abnormality and personality disorder which made him likely to engage in predatory acts of sexual violence, he met the definition of a SVP. After hearing Dr. Spizman's testimony and based on the advice of his attorneys, Brock concluded that it was unlikely he would win unconditional release at trial. He also decided a conditional release from confinement would more likely result from negotiating with the State than by a jury trial. Before the second day of testimony resumed, the parties notified the court they were attempting to settle the case. Later that same day, Brock and the State entered into a settlement agreement ("the Agreement").

The Agreement required Brock and the State to each use their "best efforts" to explore, develop, and craft an appropriate less restrictive placement alternative (LRA) that would be acceptable to the SCC. Clerk's Papers (CP) at 234. In exchange, Brock agreed that "he currently continues to meet the criteria for and the definition of a [SVP]." CP at 233. He also agreed to waive his "statutory and any constitutional right to seek, petition [for] or accept an unconditional release or removal of his designation as a [SVP] for a period of four (4) years from the date of [the] Order." CP at 234, ¶ 6 ("Paragraph Six"). This promise extended to any unconditional release that might be recommended by the SCC. Brock's counsel told the court that she had read the Agreement to Brock word for word with particular emphasis on Paragraph Six. She stated that

Brock indicated he understood the agreement and "he specifically agreed to that provision [Paragraph Six] as well." Verbatim Report of Proceedings (3/4/10) at 307. The court questioned Brock about his understanding of the Agreement and whether he was entering into it knowingly, intelligently and voluntarily. Brock answered "Yes." to both questions.[3] VRP (3/4/10) at 310-11. The court approved the Agreement as in the interest of justice. The parties filed the Agreement, signed by Brock, counsel for both sides, and the court. The jury was dismissed and the trial ended.

Seven months later, Dr. Spizman conducted an annual review of Brock, as required by statute. Based on this evaluation, Dr. Spizman "ha[d] significant uncertainty whether [Brock continued to have] a mental abnormality." CP at 147. He thus concluded Brock no longer met the criteria for continued involuntary commitment. Brock did not petition for unconditional release at that time.

A year later, after the October 2011 annual review, Dr. Spizman was again "unable to clearly identify an underlying mental abnormality/personality disorder that would meet the criteria necessary for Mr. Brock to be civilly committed as a Sexually Violent Predator." CP at 191. He also questioned the degree of risk Brock posed if he was released from confinement, opining "I cannot state [Brock] continues to be more likely than not to reoffend sexually if released unconditionally from confinement." Id.

---

[3] The court stated, "[SCC] might submit a report saying that they don't believe that you're a sexually violent predator within those four years, and that you should be released unconditionally, that you by this paragraph, if that happened, are agreeing that you would not seek an unconditional release or attempt to have you designated as not being a sexually violent predator. Do you understand that?" Brock answered, "Yes, I do." VRP (3/4/10) at 311-12.

On November 10, 2011, less than two years after signing the Agreement, Brock filed a memorandum, citing Dr. Spizman's report, in support of his request for a trial on whether he should be unconditionally released. The State objected to the request. It argued that, regardless of Dr. Spizman's opinion, the Agreement precluded Brock from seeking unconditional release until 2014.

In March 2012, Brock filed a motion to strike, withdraw or otherwise not enforce the stipulation, contending the agreement was unenforceable because it usurped the authority of the court and because the agreement was unconscionable. The State opposed the motion. It contended that because Brock was seeking relief from a judgment or order, the motion was properly analyzed under CR 60. The State pointed out that Brock had not shown that any of the bases listed in CR 60(b)(1)–(10) applied. Accordingly, it argued, the motion should be denied. In reply, Brock clarified that his request for relief was not based on CR 60(b).

The court granted Brock's motion and entered an order striking Paragraph Six of the Agreement.[4] The court concluded Brock was entitled to relief because Paragraph Six violated "public policy by allowing continued confinement of Mr. Brock when he no longer meets the definition of a SVP." CP at 42. The court further found that "the waiver of a right to accept unconditional release after future annual reviews with unknown results is contrary to law because those future annual reviews may not support continued confinement in the SCC." CP at

_____

[4] Because the judge who presided over the aborted trial had retired, the motion was heard by a different judge.

42. Although Brock expressly denied that he sought to vacate the Agreement under CR 60(b), the court also granted relief under CR 60(b)(11) concluding that under the circumstances, Brock's continued confinement without a right to seek unconditional release was an extraordinary circumstance justifying relief.[5] The judge rejected Brock's claim that the Agreement was unconscionable and reserved ruling on the issue of whether the Agreement failed for lack of consideration.[6]

The State appeals.

## DISCUSSION

Brock first contends that the Agreement is illegal because, in light of the results of his most recent annual reviews, it subjects him to confinement without requiring the State to show that he meets the necessary statutory and constitutional commitment criteria, i.e., that he is currently both mentally ill and dangerous. He also contends the Agreement is unlawful because it assumes a person may volunteer for continued commitment when the State fails to justify involuntary commitment, which he argues is contrary to the SVP statute. Thus, he contends the Agreement is void and unenforceable. We disagree.

In general, parties may contract as they wish, and courts will enforce their agreements without passing on the substance. Redford v. Seattle, 94 Wn.2d 198,

---

[5] Both parties agree, albeit for different reasons, that the trial court improperly granted Brock relief under CR 60(b). The State contends that the Agreement is a stipulated judgment to which CR 60(b) applies and relief should have been denied because the necessary showing under the rule (i.e. fraud or mutual mistake) was not made. Brock contends that the rule is inapplicable because the Agreement was not a final judgment. In light of our disposition of this case, we need not resolve this dispute.

[6] Because neither party briefs these two issues on appeal, we do not address them.

206, 615 P.2d 1285 (1980). But a contract that is in conflict with statutory requirements is illegal and unenforceable as a matter of law. Failor's Pharmacy v. Dep't of Soc. & Health Servs., 125 Wn.2d 488, 499, 886 P.2d 147 (1994) (citing Hederman v. George, 35 Wn.2d 357, 362, 212 P.2d 841 (1949)); Hammack v. Hammack, 114 Wn. App. 805, 810-11, 60 P.3d 663 (2003). In the context of a plea agreement in a criminal case, generally a defendant can waive any right that exists for his or her benefit if he or she so chooses. State v. Peltier, No. 89502-3 (2014 WL _____ (August 21, 2014)). But a plea agreement cannot bind a court to impose a sentence that is contrary to law. State v. Barber, 170 Wn.2d 854, 870, 248 P.3d 494 (2011).

Brock argues that the Agreement is void as a matter of law because it attempts to bind the court to detain him under circumstances that are contrary to statutory and constitutional law. But Brock misconstrues the Agreement and its effect on his detention. Even absent the Agreement, Brock is not entitled to unconditional release based on the results of his 2011 annual review.[7] Under RCW 71.09.090(1), he is only entitled to a trial to determine whether or not the State can prove that he continues to meet the definition of a SVP. Obviously, the outcome of such a proceeding is unknown. Thus, what Brock has waived in his Agreement is not his release from confinement, but rather his right to petition for a trial on the issue. The issue before us is whether a SVP may knowingly,

---

[7] We also reject Brock's contention that the Agreement converts his detention from involuntary to voluntary. The basis for Brock's current detention is not the Agreement, but instead, the jury finding in 1991 that he met the criteria for commitment as a SVP beyond a reasonable doubt. That judgment has never been set aside and remains in effect unless and until it is determined otherwise in a new proceeding.

intelligently and voluntarily waive the right to petition for such a trial or whether such an agreement is, as Brock contends, contrary to law.

In <u>Peltier</u>, our Supreme Court noted that generally criminal defendants can waive rights that exist for their benefit. We see no reason why the same general rule should not apply in this context. A SVP, like a criminal defendant, may determine for any number of reasons that it is to his or her benefit to waive the right to a trial. And if it appears advantageous to waive the right to a trial, he or she should be able to do so. We are not persuaded that we should constrain a person's ability to make such a decision regarding the conduct of their own case.

Nor are we persuaded that permitting a SVP to make such a choice is contrary to the SVP statute. RCW 71.09.090(1) provides:

> If the secretary determines that the person's condition has so changed that either: (a) The person no longer meets the definition of a sexually violent predator; or (b) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the secretary shall authorize the person to petition the court for conditional release to a less restrictive alternative or unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment. The court, upon receipt of the petition for conditional release to a less restrictive alternative or unconditional discharge, shall within forty-five days order a hearing.

According to this subsection, the Department of Social and Health Services (DSHS) must authorize a SVP to file a petition, if the annual review concludes the committed person no longer meets the definition of a SVP. Brock urges us to find that because the authorization by DSHS to file a petition is mandatory under these circumstances, so too is the filing of the petition for unconditional release.

But, in the absence of any ambiguity on this point, there is no occasion for us to interpret or read into the statute words that are not there. C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 708, 985 P.2d 262 (1999). Here, under the plain language of the statute, the filing of the petition is not mandatory. Nor does the statute place the discretion whether to file a petition in DSHS. Rather, the choice appears to lie with the SVP. We discern no inconsistency with the statute in permitting a committed person to waive the right to petition for a trial if he or she so chooses.

Brock points out that under RCW 71.09.090(2)(a), if the annual review concludes the person still meets the commitment criteria, DSHS "shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over [DSHS's] objection. The notice shall contain a waiver of rights," in the event the SVP chooses not to exercise this right. Based on this provision, he argues, and the trial court so concluded, that a waiver of the right to petition for unconditional release in excess of one year, i.e., concurrent with the annual review, violated public policy and was contrary to law. We disagree that the provisions for notice of the right to petition and waiver of that right in subsection (2)(a) are applicable to subsection (1).

Subsection (2)(a) specifically addresses notice of and waiver of the right to file a petition over DSHS's objection. Notice of the right to file a petition under this circumstance is necessary because otherwise a committed person might reasonably believe that an unfavorable annual review precluded a petition for any

8

type of release even though it does not. The subsection also recognizes that because the likelihood of release in light of an unfavorable review is substantially less, a committed person may decide to waive filing a petition. Neither of these circumstances are present in a case such as this which arises under subsection (1). That subsection makes no mention of notice of the right to file a petition or of waiver because the favorable annual review and the mandatory authorization to file a petition is sufficient notice. And the question of whether to file a petition in light of a favorable annual review is not one of waiver, but one of choice that lies with the committed person.

We conclude the trial court erred in vacating Paragraph Six of the Agreement between Brock and the State. [8]

*Reverse.*

WE CONCUR:

_Spearman, C.J._

_Becker, J._

_Cox, J._

---

[8] Brock also argues that the Agreement is unlawful as ultra vires, because through it, the Snohomish County prosecutor has bound "DSHS, the SCC and the Washington Office of Public Defense (OPD) to pay for Brock's continued commitment even though the [S]tate could not establish he continued to meet commitment criteria." Brief of Respondent at 23-24. We disagree. As discussed above, because the basis for Brock's detention is the 1991 jury verdict, each of the noted agencies remain statutorily obliged to fund Brock's commitment.