233 P.3d 871 (2010)
SOUTH TACOMA WAY, LLC, a Washington limited liability company, Respondent,
v.
STATE of Washington, and Sustainable Urban Development #1, LLC, a Washington limited liability company, Petitioners.
No. 82212-3.
Supreme Court of Washington, En Banc.
Argued January 14, 2010.
Decided June 24, 2010.
*872 Patrick J. Mullaney, Foster Pepper, P.L.L.C., Seattle, WA, for Petitioner.
Robert G. Casey, Attorney at Law, Tacoma, WA, Philip Albert Talmadge, Sidney Charlotte Tribe, Talmadge/Fitzpatrick, Tukwila, WA, Ann Elizabeth Salay, Andrea Vingo, Jay Douglas Geck, Office of the Attorney General, Olympia, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether the Washington State Department of Transportation's (DOT) sale of land in violation of statutory notice requirements under RCW 47.12.063(2)(g) is ultra vires and void. Also, we are asked to determine whether the bona fide purchaser doctrine applies under the facts of this case. The superior court held that the sale was not void and that the buyer was a bona fide purchaser. The Court of Appeals reversed and held that the sale of land was ultra vires and void, and it declined to extend the bona fide purchaser doctrine to these facts. We reverse the Court of Appeals' decision.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Until 2005, the State owned a former railroad spur (referred to as "the alley") that was abutted by property owned by several private individuals. In 2004, one of the abutting landowners, Sustainable Urban Development # 1, LLC (SUD), contacted DOT and asked to purchase the alley.
¶ 3 DOT determined that the alley was surplus property and agreed to sell it to SUD. On August 23, 2005, DOT sold the property to SUD for the property's appraised value of $180,000. At the time of the sale, more than one property abutted the alley. No notice was given to the other abutting property owners.
¶ 4 DOT mistakenly believed that SUD was the only landowner with property abutting the alley at the time of the sale. Because of this mistake, DOT followed the statutory procedure for the sale of property to a single interested party, rather than the procedure applicable when a property is abutted *873 by multiple landowners.[1] When multiple abutting landowners exist, DOT must provide each owner with written notice of the proposed sale. RCW 47.12.063(2)(g). And if more than one abutting owner provides timely notice of interest in the property, DOT must sell the property by public auction.
¶ 5 Another landowner, Frances Staub, owned property abutting the alley. Shortly after the sale to SUD was complete, in the autumn of 2005, South Tacoma Way, LLC (South Tacoma) entered negotiations to purchase the Staub property. South Tacoma expressed interest in the alley, but when it contacted DOT, it discovered that the alley had already been sold. South Tacoma objected that Staub, an abutting landowner, had not been notified of the sale.
¶ 6 In February 2006, Staub sold the property and assigned any claims regarding the alley to South Tacoma. South Tacoma filed this declaratory judgment action, asking the court to declare the sale of the alley to SUD void because it was ultra vires. SUD and DOT joined to defend the action. The parties filed cross-motions for summary judgment, and they generally agreed to the facts outlined above. The trial court ruled in favor of SUD and DOT, concluding that although DOT failed to comply with the statute, the sale was not ultra vires and SUD was a bona fide purchaser.
¶ 7 On South Tacoma's appeal, the Court of Appeals reversed the trial court. S. Tacoma Way, LLC v. State, 146 Wash.App. 639, 653, 191 P.3d 938 (2008). The court voided the sale, holding it was ultra vires because DOT failed to comply with the statutory requirements.
¶ 8 SUD petitioned for review, which was granted. S. Tacoma Way, LLC v. State, 165 Wash.2d 1036, 205 P.3d 131 (2009).

ISSUES[2]
¶ 9 (1) Is DOT's sale of the alley to SUD ultra vires?
¶ 10 (2) May SUD enforce the sale as a bona fide purchaser?

ANALYSIS

(1) Ultra Vires
¶ 11 South Tacoma argues that DOT's sale of the alley to SUD was ultra vires due to the State's failure to give written notice of the sale, as required by RCW 47.12.063(2)(g). South Tacoma also asserts that this failure to comply with statutory requirements rendered the sale void and unenforceable. The Court of Appeals agreed with South Tacoma.
¶ 12 Our cases have drawn a distinction between government acts that are ultra vires and those acts that suffer from some procedural irregularity. We first distinguished between ultra vires and merely irregular acts in Wendel v. Spokane County, 27 Wash. 121, 123-24, 67 P. 576 (1902). In Wendel, this court held that a municipal corporation is liable forand thus bound byonly those actions it had the general authority to perform. Over the years, we have repeatedly upheld this distinction, maintaining that a government action is truly ultra vires only if the agency was without authority to perform the action. Bd. of Regents v. City of Seattle, 108 Wash.2d 545, 552, 741 P.2d 11 (1987) ("An act of an officer which is within his realm of power, albeit imprudent or violative of a statutory directive, is not ultra vires."); Haslund v. City of Seattle, 86 Wash.2d 607, 622, 547 P.2d 1221 (1976) ("An ultra vires act is one performed without any authority to act on the subject."); Finch v. Matthews, 74 Wash.2d 161, 172, 443 P.2d 833 (1968) (stating that an entity is bound by "acts which are within the scope of the broad governmental powers conferred, granted or delegated, but *874 which powers have been exercised in an irregular manner or through unauthorized procedural means").
¶ 13 Ultra vires acts are those performed with no legal authority and are characterized as void on the basis that no power to act existed, even where proper procedural requirements are followed. Ultra vires acts cannot be validated by later ratification or events.
¶ 14 Conversely, acts done without strict procedural or statutory compliance are subject to different review. Those acts may or may not be set aside depending on the circumstances involved. Thus, government entities may remain responsible for lesser deviations in authority, such as failures to comply with proper procedure. E.g., Haslund, 86 Wash.2d at 622, 547 P.2d 1221. Consequently, a contract formed between a government entity and a private entity will be void only where the government entity had no authority to enter the contract in the first place.
¶ 15 If in this case the State was generally authorized to sell the surplus property, its act of doing so was not ultra vires. No serious dispute exists that, under its statutory authority, the State is generally authorized to sell surplus property. The issue in this case centers on whether failure to follow procedural requirements renders the contract or sale void.
¶ 16 South Tacoma argues that the State's violation of statutory procedures renders the sale to SUD void because any contract formed in violation of a statute is illegal and unenforceable as a matter of law. In making this broad pronouncement, however, South Tacoma fails to distinguish between substantive and procedural violations of law. The two cases on which South Tacoma relies hold that a contract contrary to the terms and policy of a legislative enactment is illegal and unenforceable. Hederman v. George, 35 Wash.2d 357, 362, 212 P.2d 841 (1949); State v. Nw. Magnesite Co., 28 Wash.2d 1, 26-27, 182 P.2d 643 (1947). Both of these cases involved not only a substantive statutory violation, but also a violation that contravened the policy behind the statutes. The State's statutory violation here is different.
¶ 17 In this case, because the State was generally authorized to sell surplus property to abutting landowners, it committed no substantive statutory violation. Nor did its procedural failure contravene the policy underlying the statute. The parties agree that one of the primary purposes of the notification provision of RCW 47.12.063(2)(g) is to protect the public from governmental fraud or collusion. No argument has been presented in this case that fraud or collusion occurred. The State's failure to notify all abutting landowners of the sale arose not by fraud, but by mistake. The State's violation of the statutory procedures does not render the contract automatically illegal and unenforceable.
¶ 18 This conclusion makes sense in this type of case. If the transaction was truly void, as our cases recognize, it would be subject to challenge and invalidation at any time, perhaps years later. Any improvements made in reliance on the invalid deed would be in vain. Here, the purchaser received a deed to the property from the State, and no circumstances exist that merit invalidation. We find no authority to hold the sale void.
¶ 19 South Tacoma argues that even if a contract is within an agency's authority, failure to comply with statutory procedures renders it ultra vires and void. We disagree. South Tacoma relies on two cases to support its position. First, it points out that we previously stated that failure to comply with statutory procedures renders a contract void. Failor's Pharmacy v. Dep't of Soc. & Health Servs., 125 Wash.2d 488, 499, 886 P.2d 147 (1994). But although we did make that statement, South Tacoma takes it out of context. In Failor's, we were faced with deciding whether the Department of Social and Health Services (DSHS) properly created Medicaid payment reimbursement schedules, i.e., whether DSHS should have adopted the schedules by rule making procedures under the Administrative Procedure Act (APA), chapter 34.05 RCW. Concluding that rule making was required, we noted that the statutory remedy for failure to adhere to rule making procedures is invalidation of the action. *875 Failor's, 125 Wash.2d at 497, 886 P.2d 147. We were not making a general pronouncement about the effect of procedural irregularity on the validity of government action; we were applying a specific statute, former RCW 34.04.025(5) (1987), which provided, "No rule hereafter adopted is valid unless adopted in substantial compliance with this section." After invalidating the reimbursement schedules, we then evaluated whether DSHS should be liable to the plaintiffs for damages. It was in this context that we discussed the ultra vires doctrine and made the statement relied on by South Tacoma. We used the doctrine not to determine whether an action was void, but rather to decide whether the plaintiffs were entitled to damages. The statement in Failor's relied on by South Tacoma thus pertained not to a determination of voidness, but rather to a determination of remedy. That issue is not before us here.
¶ 20 Further, to support the statement that "[a] contract in conflict with statutory requirements is illegal and unenforceable as a matter of law," Failor's referenced only cases where the government action was either substantively ultra vires[3] or violated both the terms and policy of the law in question.[4]Failor's, 125 Wash.2d at 499, 886 P.2d 147. Thus, Failor's should not be read, as South Tacoma and the dissent seem to urge, as eliminating the long-held distinction between ultra vires and procedurally irregular.
¶ 21 South Tacoma also analogizes the facts of this case to those present in Noel v. Cole, 98 Wash.2d 375, 655 P.2d 245 (1982). In Noel, we considered a challenge to the State's sale of timber rights on public land to a private company, Alpine Excavating, Inc. In making the sale, the State failed to comply with the State Environmental Policy Act (SEPA), chapter 43.21 C RCW, requirement to prepare an environmental impact statement (EIS) prior to the sale. We held that the State's failure to comply with the SEPA requirement rendered the sale contract ultra vires and void. Noel, 98 Wash.2d at 381, 655 P.2d 245. Although the circumstances in Noel are in many ways similar to those before us here, one important distinction exists. In Noel, we emphasized the policy underlying SEPA, that "`presently unquantified environmental amenities and values will be given appropriate consideration in decision making.'" Noel, 98 Wash.2d at 380, 655 P.2d 245 (quoting RCW 43.21C.030(2)(b)). The State, in making its sale, not only failed to comply with SEPA's requirement for an EIS, it also failed to act in accordance with the policy underlying SEPA. As discussed above, although in this case the State mistakenly failed to notify abutting landowners, its failure did not violate the policy underlying RCW 47.12.063(2)(g), the prevention of fraud and collusion in state sales of surplus property. The State's failure to comply with SEPA in Noel is thus not analogous to the State's procedural error before us here.
¶ 22 We reverse the Court of Appeals on this issue.

(2) Bona Fide Purchaser
¶ 23 At the superior court, SUD argued that the sale should be upheld because, under the circumstances of this case, no evidence of fraud or collusion existed, that it had no actual knowledge of the State's failure to comply with the statutory requirements, and that it paid the assessed value for the property. South Tacoma presented no evidence or allegations to counter these assertions, *876 and the superior court held there were no contested facts at issue.
¶ 24 SUD argues that the sale should be valid because it was a bona fide purchaser. We have traditionally stated that the bona fide purchaser doctrine provides that a good faith purchaser for value who is without actual or constructive notice of another's interest in purchased real property has superior interest in that property. Tomlinson v. Clarke, 118 Wash.2d 498, 500, 825 P.2d 706 (1992). Although, until now, we have applied the bona fide purchaser doctrine only to situations in which two putative titleholders existed, we have never limited the doctrine to those circumstances alone.
¶ 25 We have previously considered other equitable remedies in cases of ultra vires government action, namely unjust enrichment, Chem. Bank v. Wash. Pub. Power Supply Sys., 102 Wash.2d 874, 909-12, 691 P.2d 524 (1984) (citing Noel, 98 Wash.2d 375, 655 P.2d 245; Finch, 74 Wash.2d 161, 443 P.2d 833), and estoppel, Finch, 74 Wash.2d at 171-76, 443 P.2d 833 (citing Edwards v. City of Renton, 67 Wash.2d 598, 409 P.2d 153 (1965)). Those cases took a consistent approach, first recognizing the distinction between government action that is absolutely ultra vires and merely procedurally irregular, then finding that equitable remedies are unavailable in cases where the government action is absolutely ultra vires, Chem. Bank, 102 Wash.2d at 911, 691 P.2d 524, but may be available where the action suffers only from a procedural defect that does not undermine the policies behind the statutory procedure, Finch, 74 Wash.2d at 171, 443 P.2d 833. The bona fide purchaser doctrine should be applied analogously here.
¶ 26 Notably, this court has already laid the foundation for applying the bona fide purchaser doctrine to good faith purchasers of state-owned land. As early as 1913, in State v. Hewitt Land Co., 74 Wash. 573, 586, 134 P. 474 (1913), we stated,
A purchaser of land sold by the state or patented by the government has a right to presume that all proceedings leading up to the sale are regular. He is not bound to look beyond the face of the deed, either to find out whether the department has strictly complied with the law or rightly decided some fact, nor is he bound to investigate the conduct of the patentee or grantee.
Using this reasoning, the Hewitt court concluded that absent fraud, and where the State has general authority to sell the land, a good faith purchaser has the right to rely on the resulting deed. A bona fide purchaser may thus enforce a procedurally irregular land sale, as occurred in this case.[5] That same reasoning applies today and controls the outcome here.
¶ 27 According to the uncontested facts relied on by the superior court, the State sold the alley to SUD at its appraised fair market value; there are no facts to indicate that SUD committed fraud or that collusion between it and the State exists. SUD had no knowledge that the State's sale of the alley was procedurally flawed, and under Hewitt, it had a right to presume that the presale proceedings were regular and proper.
¶ 28 South Tacoma argues that SUD is not a bona fide purchaser because it had constructive notice of South Tacoma's interest in the property. South Tacoma asserts that SUD had sufficient information to prompt it to inquire as to whether the State followed proper procedure. However, as stated above, our holding in Hewitt controls here. Because SUD was entitled to presume that the proceedings leading up to the sale were procedurally valid, it had no obligation to discover the relevant statutory procedures or to ensure that the State adhered to them. This is true particularly where no actual notice of the State's statutory violation was alleged. We agree with the superior court that SUD is a bona fide purchaser for value and that the State's sale of the alley to SUD is valid.

*877 CONCLUSION
¶ 29 We reverse the Court of Appeals and reinstate the judgment of the superior court.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
SANDERS, J. (dissenting).
¶ 30 RCW 47.12.063(2)(g) conditions the sale of surplus Department of Transportation (DOT) land on written notice to all abutting landowners. This case does not turn on whether DOT's sale fell within its realm of power. The more appropriate question is whether DOT's sale of land without notice fell within its realm of power. DOT's sale to Sustainable Urban Development # 1, LLC (SUD) was ultra vires. South Tacoma Way, LLC (South Tacoma) was entitled to notice and a public auction.[1] I dissent.

I. Ultra Vires
¶ 31 Ultra vires means "[u]nauthorized; beyond the scope of power allowed or granted." BLACK'S LAW DICTIONARY 1662 (9th ed. 2009). "Ultra vires acts are those done `wholly without legal authorization or in direct violation of existing statutes.'" Metro. Park Dist. of Tacoma v. State, 85 Wash.2d 821, 825, 539 P.2d 854 (1975) (quoting Finch v. Matthews, 74 Wash.2d 161, 172, 443 P.2d 833 (1968)). The unauthorized contracts of governmental entities are rendered void and unenforceable under the ultra vires doctrine. Chem. Bank v. Wash. Pub. Power Supply Sys., 99 Wash.2d 772, 797, 666 P.2d 329 (1983). The ultra vires doctrine applies to the actions of municipal corporations. Noel v. Cole, 98 Wash.2d 375, 379, 655 P.2d 245 (1982). "Even where a contract is within an agency's substantive authority, failure to comply with statutorily mandated procedures is ultra vires and renders the contract void." Failor's Pharmacy v. Dep't of Soc. & Health Servs., 125 Wash.2d 488, 499, 886 P.2d 147 (1994). Moreover, "[a] contract in conflict with statutory requirements is illegal and unenforceable as a matter of law." Id.
¶ 32 State statute outlines DOT's authority to sell surplus land. The legislature expressly limited DOT's authority by enacting RCW 47.12.063(2)(g), which permits a sale to "[a]ny abutting private owner but only after each other abutting private owner (if any), as shown in the records of the county assessor, is notified in writing of the proposed sale." (Emphasis added.) "If more than one abutting private owner requests in writing the right to purchase the property within fifteen days after receiving notice of the proposed sale, the property shall be sold at public auction in the manner provided in RCW 47.12.283." Id. Pursuant to the statute's plain language, DOT can sell land only after giving notice.
¶ 33 The majority states: "If in this case the State was generally authorized to sell the surplus property, its act of doing so was not ultra vires." Majority at 874. This statement frames the matter too broadly. DOT is not, in fact, generally authorized to sell surplus property; it is generally authorized to sell surplus property only after giving notice. Failing to comply with the notice requirement brings the sale beyond the scope of power granted by the legislature and, unmistakably, in direct violation of existing statute. DOT did not have the authority to sell the land to SUD without first notifying abutting landowners.
¶ 34 The majority states that "a government action is truly ultra vires only if the agency was without authority to perform the action," majority at 873; or "`[A]n ultra vires *878 act is one performed without any authority to act on the subject,'" id. at 873 (quoting Haslund v. City of Seattle, 86 Wash.2d 607, 622, 547 P.2d 1221 (1976)); or finally, "`An act of an officer which is within his realm of power, albeit imprudent or violative of a statutory directive, is not ultra vires,'" id. at 873 (quoting Bd. of Regents v. City of Seattle, 108 Wash.2d 545, 552, 741 P.2d 11 (1987)).
¶ 35 Under the majority's interpretation, the State can never act ultra vires in selling land because it can sell land broadly. This interpretation erases the notice requirement from the statute. From now on DOT can simply sell to whomever it chooses without notice to other abutting landowners, in violation of RCW 47.12.063(2)(g). What other statutory limitations can the State ignore?
¶ 36 RCW 47.12.063(2)(g) requires DOT to give South Tacoma written notice of the sale so it could participate in a public auction. DOT had no authority to sell the surplus property without notice. Because DOT's unauthorized act lay outside its realm of power and beyond its authority, its sale to SUD was ultra vires.[2]
¶ 37 South Tacoma also argues that even if the act were within an agency's authority, violating statutory requirements would render an agency contract ultra vires and void. South Tacoma points to Failor's Pharmacy v. Department of Social & Health Services, 125 Wash.2d 488, 499 886 P.2d 147 (1994), to support its argument. The majority dismisses the value of Failor's, however, by arguing the case determined "remedy" rather than "voidness." Majority at 874-75. While I do not think the difference is sufficiently distinguishable, the majority's approach nonetheless misinterprets Failor's pedigree. Failor's relied on Hederman v. George, 35 Wash.2d 357, 212 P.2d 841 (1949), for the proposition upon which South Tacoma relies. See Failor's, 125 Wash.2d at 499, 886 P.2d 147. But Hederman did not provide a "remedy." Hederman explicitly addressed whether a "contract which is contrary to the terms and policy of an express legislative enactment is illegal and unenforcible." Hederman, 35 Wash.2d at 362, 212 P.2d 841. Accordingly Failor's roots remain intact. DOT's failure to comply with the requirements of RCW 47.12.063(2)(g) renders the sale to SUD void and unenforceable.

II. Bona Fide Purchaser
¶ 38 The bona fide purchaser doctrine states that "a good faith purchaser for value, who is without actual or constructive notice of another's interest in the property purchased, has the superior interest in the property." Tomlinson v. Clarke, 118 Wash.2d 498, 500, 825 P.2d 706 (1992) (citing Glaser v. Holdorf, 56 Wash.2d 204, 209, 352 P.2d 212 (1960)).
¶ 39 Whether the bona fide purchaser doctrine can cure, via equitable means, the State's ultra vires action appears to be a matter of first impression.[3] I agree with the Court of Appeals, which held that status as a bona fide purchaser does not remedy DOT's ultra vires action. I would hold the bona fide purchaser doctrine does not apply to contracts that are ultra vires.
¶ 40 As the Court of Appeals pointed out, we have held that other equitable principles, including equitable estoppel, cannot be used for relief when the State has improperly exceeded its statutory authority. See S. Tacoma Way, LLC v. State, 146 Wash.App. 639, 653, 191 P.3d 938 (2008) (citing Finch, 74 Wash.2d at 172, 443 P.2d 833); see also Chem. Bank, 102 Wash.2d at 910, 691 P.2d 524 ("[U]njust enrichment theory cannot be applied against a municipality where the acts *879 are substantively ultra vires."). This has been the law for more than a century. See, e.g., Louisville, N.A. & C. Ry. Co. v. Louisville Trust Co., 174 U.S. 552, 567, 19 S.Ct. 817, 43 L.Ed. 1081 (1899) ("A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guaranty the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful and void, and incapable of being made good by ratification or estoppel.").
¶ 41 I would extend the same principles here. It does not make sense to allow the bona fide purchaser doctrine to make good an action wholly beyond DOT's authority in the first place.[4]
¶ 42 I dissent.
NOTES
[1] Pursuant to RCW 47.12.063(2)(g), the DOT may sell surplus property to

[a]ny abutting private owner but only after each other abutting private owner (if any), as shown in the records of the county assessor, is notified in writing of the proposed sale. If more than one abutting private owner requests in writing the right to purchase the property within fifteen days after receiving notice of the proposed sale, the property shall be sold at public auction in the manner provided in RCW 47.12.283.
[2] The parties dispute whether South Tacoma had standing to pursue this action in the first place. However, given our resolution of the remaining two issues, we need not discuss the question of standing.
[3] Chem. Bank v. Wash. Pub. Power Supply Sys., 99 Wash.2d 772, 797-98, 666 P.2d 329 (1983) (Chemical Bank I); see Chem. Bank v. Wash. Pub. Power Supply Sys., 102 Wash.2d 874, 909-12, 691 P.2d 524 (1984) (Chemical Bank II) ("We ... find the acts [in Chemical Bank I] substantively ultra vires.").
[4] Noel v. Cole, 98 Wash.2d 375, 378-81, 655 P.2d 245 (1982) (finding agency's failure to prepare an environmental impact statement violated the State Environmental Policy Act, chapter 43.21 C RCW, purpose "to `insure that presently unquantified environmental amenities and values will be given appropriate consideration in decision making'") (quoting RCW 43.21C.030(2)(b)); Hederman v. George, 35 Wash.2d 357, 362, 212 P.2d 841 (1949) ("A contract which is contrary to the terms and policy of an express legislative enactment is illegal and unenforcible [sic]."); Machen, Inc. v. Aircraft Design, Inc., 65 Wash.App. 319, 333, 828 P.2d 73 (1992) (citing Hederman, 35 Wash.2d 357, 212 P.2d 841), overruled on other grounds by Waterjet Tech., Inc. v. Flow Int'l Corp., 140 Wash.2d 313, 321, 996 P.2d 598 (2000).
[5] However, where government action is absolutely ultra vires or where the procedural irregularity undermines the policy behind the statutory procedure, the bona fide purchaser doctrine should not apply.
[1] The majority declines to analyze standing. Majority at 873 n. 2. Because I would find for South Tacoma, however, it should be addressed briefly here. South Tacoma enjoys standing on at least two independent grounds. First, standing exists because the previous property owner, who owned the property at the time DOT sold to SUD, assigned any and all claims and causes of action to her successors. See, e.g., Styner v. England, 40 Wash.App. 386, 389-90, 699 P.2d 234 (1985). Second, under the Uniform Declaratory Judgments Act (UDJA), an action will be allowed for a "person ... whose rights, status or other legal relations are affected by a statute...." RCW 7.24.020. South Tacoma meets the UDJA's criteria. Accordingly we properly consider South Tacoma's claims.
[2] The majority asserts DOT's failure to give notice constituted merely a procedural irregularity. Majority at 874. Again, this position ignores RCW 47.12.063(2)(g)'s express limitation on DOT's authority. DOT would have arguably committed a procedural irregularity, for example, by giving oral, instead of written, notice. See RCW 47.12.063(2)(g).
[3] I note that the bona fide purchaser doctrine, in its customary use, does not apply here. The doctrine applies when two or more putative titleholders assert competing superior ownership interests in property. In this case, there is only one putative titleholder: SUD. South Tacoma merely seeks an opportunity to bid on the property at auction. SUD attempts to use the bona fide purchaser doctrine to cure an ultra vires acta use beyond the doctrine's intended scope.
[4] The majority relies exclusively on State v. Hewitt Land Co., 74 Wash. 573, 586, 134 P. 474 (1913), to hold SUD is a bona fide purchaser. In the majority's words, Hewitt held that "absent fraud, and where the State has general authority to sell the land, a good faith purchaser has the right to rely on the resulting deed." Majority at 876 (emphasis added). Because the State did not have general authority to sell the land without written notice, as articulated above, Hewitt does not support the majority.