IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RESPONSIBLE GROWTH *NE | ) | No. 36736-3-III |
| WASHINGTON; CITIZENS AGAINST | ) | |
| NEWPORT SILICON SMELTER; | ) | |
| THEODORE & PHYLLIS KARDOS; | ) | |
| DENISE D. TEEPLES; GRETCHEN L. | ) | |
| KOENIG; SHERYL L. MILLER; JAMES | ) | |
| W. & ROSEMARY CHANDLER; and | ) | |
| PAMELA BYERS LUBY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEND OREILLE PUBLIC UTILITY | ) | |
| DISTRICT NO. 1; PEND OREILLE | ) | |
| COUNTY; and HITEST SAND, INC., | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — This appeal asks whether a public utility district (PUD) holds

authority to purchase land for a utility easement even though the PUD may have had the

ulterior motive to sell the land to a third party. The appeal also asks if a public utility

district's sale of land is ultra vires if the district fails to follow the statutory requirement

of gaining approval of voters of the district or the demand that the land be unfit for PUD

purposes. We hold that Pend Oreille County PUD possessed authority to purchase the

parcel and its resale of the parcel was not ultra vires. We affirm the rulings of the

superior court in dismissing the citizen challenge.

FACTS

In 1996, Public Utility District No. 1 of Pend Oreille County (Pend Oreille County PUD, the PUD, or public utility district) purchased three parcels of land within the area served by the PUD. The parties refer to the parcels in this litigation as parcels No. 17036, No. 19183, and No. 19193. The PUD purchased the three parcels for a planned turbine electricity plant, but the PUD never executed the plans. The PUD thereafter grew timber on the land. Pend Oreille County owned an adjoining parcel known as Parcel No. 19182, which parcel is the subject of this litigation.

On March 15, 2016, Pend Oreille County PUD conducted a public hearing, during which the PUD's board of commissioners declared the three parcels as surplus to the PUD's needs. Minutes from the March 15 meeting read:

> Declaration of Surplus Real Property—District Lands. Based on staff recommendation, a motion was made by Commissioner Knapp and seconded by Commissioner Peterson <u>to declare various District lands as being no longer necessary, material to, or useful in the operations of the District and, therefore, surplus to the needs of the District</u>. The motion passed unanimously.

Clerk's Papers (CP) at 99 (emphasis in original). On August 31 and September 7, 2016, Pend Oreille County PUD advertised the three surplus parcels for sale, but thereafter received no purchase offers.

On April 18, 2017, HiTest Sand, Inc. (HiTest) sent a letter to the PUD inquiring about the three surplus parcels and requesting electrical service from the PUD for a silicon smelter plant that HiTest proposed to build on the parcels. HiTest also expressed interest in purchasing the adjacent fourth parcel, Parcel No. 19182, owned by Pend Oreille County. The four parcels together comprise 186.3 acres. The April 18 letter did not present an offer to buy the three parcels or solicit an offer from the PUD to sell the parcels. Instead the letter constituted "a formal offer of contract for power supply services from the District." CP at 104.

Between April and July 2017, Amber Orr, Pend Oreille County PUD director of engineering, discussed with the PUD staff, the PUD counsel, and HiTest staff about the infrastructure needed to serve HiTest's proposed silicon smelter plant. In a summary judgment declaration, Orr averred:

> 5. I specifically recall conversations with District staff . . . in the summer of 2017 where we discussed the existing underground electrical distribution line and the need to specifically reserve an express easement across the western portion of Parcel No. 19182, as part of the potential land sale to HiTest.
> 6. I recall working with Ms. Gentle, as well as with District counsel, Ms. Elizabeth Tellessen, in identifying the location and width for the needed easement across Parcel No. 19182. These conversations occurred before the August 1, 2017 meeting of the District's Board of Commissioners where they approved the sale of land to HiTest.
> 7. A true and correct copy of the District's GIS map depicting the location of the underground utility line is attached as Exhibit A. . . .

3

8. Since the underground line ran along or near the border of the District's properties and the former County parcel [No. 19182], the District never obtained a utility easement while the properties were held by public entities. However, when HiTest expressed its interest in acquiring the District properties and the County parcel [No. 19182], I believed it would be easier for the District to obtain the easement by reservation rather than trying to negotiate an easement from a future customer. It was for that reason that the District acquired Parcel No. 19182 before selling it as surplus once the easement was reserved.

CP at 79-80. Our copy of Exhibit A to Orr's declaration is unreadable such that we cannot discern whether the PUD utility line encroached on the county land, or, if not, whether the line lay within feet of the county land such that the PUD would need an easement to service the line. The declaration of Colin Willenbrock, the PUD general manager, confirmed Orr's testimony: "The District sought to acquire Parcel No. 19182 from Pend Oreille County to reserve an express easement on that property." CP at 87.

On April 25, 2017, Pend Oreille County PUD and HiTest Sand signed a tentative letter of intent, and HiTest deposited earnest money for the purchase of all four parcels from the PUD, including Parcel No. 19182. At that time, the PUD did not own Parcel No. 19182, but sought to purchase the parcel from Pend Oreille County. The letter of intent declared, in pertinent part:

Consistent with the interest you conveyed during the meetings in Newport on April 11, 2017, this Letter of Interest outlines some of the major terms and conditions under which Public Utility District No. 1 of Pend Oreille County ("District") proposes to enter negotiations to sell the

4

property described below to HiTest Sand, Inc., or at HiTest's election, Silica Investments, Inc. (collectively or in the alternative "Purchaser").

    1. Property: Approximately 186.3 acres of vacant land located south of Newport, Washington, the "Property," which contains: (a) One parcel of 13.83 acres (Property ID # 19182) which is currently owned by Pend Oreille County, but is eligible to be surplused and conveyed to the District through intergovernmental transfer. It is anticipated that the intergovernmental transfer will take place prior to execution of the Purchase Agreement. In the event an intergovernmental transfer cannot be approved by Pend Oreille County, the District shall have no responsibility to acquire the 13.83 acres and there shall be no refund of the LOI [letter of intent] Deposit; and (b) Three parcels owned by the District (Parcel # 19183) of 39.0 acres, (Parcel # 17036) of 80 acres, (Parcel # 19193) of 53.47 acres. The District's parcels have been surplused.

CP at 110.

On June 13, 2017, HiTest and Pend Oreille County PUD signed a revised letter of intent. In the revised letter, the PUD removed Parcel No. 19182 from the list of property being sold. The letter read, in part:

    This letter is to confirm your conversation with Kim Gentle regarding the Letter of Intent, dated April 25, 2017 ("Original LOI"). As was discussed there has been a change in circumstances regarding the scope of the Property, as defined in the Original LOI. This Revised Letter of Intent reflects the change in circumstances, but all other portions of the Original LOI not referenced below shall remain the same.

    1. Property: Approximately 172.47 acres of vacant land located south of Newport, Washington, the "Property," which contains: Three parcels owned by the District (Parcel # 19183) of 39.0 acres, (Parcel # 17036) of 80 acres, (Parcel #19193) of 53.47 acres, which District has declared to be surplus property.

CP at 115-16.  On June 16, 2017, the PUD dispatched a draft purchase and sale

agreement to HiTest.

On June 20, 2017, the Pend Oreille County Board of Commissioners approved

Resolution 2017-22, which authorized the sale of Parcel No. 19182 to the Pend Oreille

County PUD.  Section D and E of the resolution contained the following language:

> D.  The Board of [Pend Oreille] County Commissioners finds it is
> not practical to build on property identified as Assessor's Parcel No. 19182
> as it is land-locked with no road access.
> E.  Pend Oreille County Public Utility District (PUD) has inquired
> into the purchase of Assessor's Parcel No. 19182 as it is adjacent to PUD
> land and *it contains an easement* that impacts PUD operations.

CP at 106 (emphasis added).

During a board meeting on August 1, 2017, Pend Oreille County PUD Board of

Commissioners discussed the sale of the four parcels, including Parcel No. 19182.  After

discussion and public input, the board of commissioners voted that Parcel No. 19182,

once subject to the easement, "was unfit for and no longer necessary or useful in systems

operations, such that it should be sold for its fair market value."  CP at 88.  The board of

commissioners also adopted Resolution 1399, which authorized the PUD general manager

to negotiate with HiTest Sand for the sale of the combined four parcels.  The PUD,

however, still did not own Parcel No. 19182.  Resolution 1399 declared in relevant part:

6

> WHEREAS, Public Utility District No. 1 of Pend Oreille County ("District") surplused District lands with Parcel numbers 17036, 19183 and 19193 on March 15, 2016; and
>
> . . . .
>
> WHEREAS, the District received inquiry and request for electric service from HiTest Sands, Inc. on April 18, 2017; and
>
> . . . .
>
> WHEREAS, the District sent a draft Purchase Agreement to HiTest Sands, Inc. on June 16, 2017; and
>
> WHEREAS, the District received authorization to purchase Pend Oreille County land Parcel number 19182 at the tax assessed value on June 20, 2017; and
>
> WHEREAS, the District now intends to sell the entire four parcel package following final appraisal and due diligence to HiTest Sands, Inc.;
>
> NOW, THEREFORE, BE IT RESOLVED by the Board of Commissioners of Public Utility District No. 1 to authorize the general manager to independently negotiate the final sale of Parcel numbers 17036, 19182, 19183 and 19193 for not less than the appraised value to HiTest Sands, Inc.

CP at 132. The resolution did not mention purchasing Parcel No. 19182 from Pend Oreille County for the purpose of acquiring a utility easement.

On August 2, 2017, Pend Oreille County transferred title to Parcel No. 19182 to Pend Oreille County PUD by a tax title deed. The PUD purchased the parcel for the tax assessed value. On August 21, 2017, the PUD and HiTest executed a real estate purchase and sale agreement for the four parcels, for a price of $300,000.

The Pend Oreille County PUD hired a real estate appraiser, who appraised the four parcels at $250,000. The PUD and HiTest Sand then entered an agreement for HiTest to

7

purchase all four parcels for $300,000. On September 18, 2017, the PUD recorded a special warranty deed that transferred all four parcels to HiTest Sand. The deed reserved a utility easement for the PUD only across the west sixty feet of parcel 1 of the four parcels. Parcel 1 was a parcel other than Parcel No. 19182.

On September 19, 2017, Pend Oreille County PUD issued a press release regarding the sale of the land to HiTest. The press release proclaimed:

> In June 2017, the PUD officially acquired the *adjacent county property* with the intent to sell the entire package to HiTest. The PUD Board of Commissioners authorized the sale of the land to HiTest at the appraised price and that process closed on September 19.

CP at 157 (emphasis added). The release referenced Parcel No. 19182 as the adjacent county property. The release did not mention the acquisition of an easement as a purpose of purchasing Pend Oreille County's adjacent parcel.

On April 23, 2018, appellants Citizens Against Newport Silicon Smelter and Responsible Growth \*NE Washington sent a letter to Pend Oreille County PUD. The letter claimed that the purchase of Parcel No. 19182 by the PUD from Pend Oreille County and the sale of the parcel from the PUD to HiTest Sand violated Washington statutes. The organizations wrote that the PUD violated the law by purchasing Parcel No. 19182 for the sole purpose of selling the land to HiTest Sand. The organizations further

8

contended that the PUD sold the parcel illegally because the PUD never declared the land surplus or received a three-fifths vote from the PUD's constituents.

Pend Oreille County PUD later noticed an error in its September 18, 2017, deed to HiTest Sand. The PUD then corrected the deed to reserve a utility easement across Parcel No. 19182. The fifteen feet easement covered 7.5 feet of Parcel No. 19182 along its boundary with the adjoining transferred parcels and 7.5 feet of the adjoining parcels along their borders with Parcel No. 19182. The PUD did not sign or initial, however, the correction in the deed. The PUD simply struck the easement language on the September 2017, deed and attached an exhibit, Exhibit A, to describe the easement. Exhibit A read:

> Subject to and reserving to the Grantor [the PUD] a perpetual easement and right to enter, maintain, repair, rebuild, operate, and patrol the existing underground electric power distribution lines over, in under and through a right-of-way 15 feet in width being 7.5 feet on either side of the boundary line between Parcels 2 [No. 19182] and 3 and extending south through Parcel 4 to the southern boundary of Parcel 4, as well as reasonable ingress and egress across the parcels to reach the easement area.

CP at 155. On May 14, 2018, the PUD refiled the deed and its corrected easement description, with a cover sheet asking for re-recordation because of a scrivener error in the easement reservation. The record does not reflect that HiTest consented to the correction in the deed. No party challenges the validity of the corrected deed.

On May 15, 2018, Pend Oreille County PUD Board of Commissioners adopted Resolution 1411. Resolution 1411 noted that the PUD previously laid underground distribution lines on, along, and through the western portion of Parcel No. 19182, that the PUD needed an easement for the distribution lines, that the PUD sought to acquire Parcel No. 19182 from Pend Oreille County to reserve an express easement for the existing underground distribution line, and that Parcel No. 19182, once subject to the easement, was no longer needed or useful for the PUD operations. Resolution 1411 added that the board of commissioners previously made the stated determinations on August 1, 2017, at a public meeting after extensive discussion. In his summary judgment declaration, the PUD General Manager Colin Willenbrock stated: "Resolution 1411 affirmed and ratified the District's purchase of Parcel No. 19182, the determination that Parcel No. 19182 was surplus to the District's needs after reserving an express utility easement, and the sale of Parcel No. 19182, along with the District Properties, to HiTest." CP at 90.

PROCEDURE

On June 8, 2018, Citizens Against Newport Silicon Smelter, Responsible Growth *NE Washington, and eight individuals (collectively "Responsible Growth") filed a complaint for a declaratory judgment that would declare void Pend Oreille County PUD's purchase and sale of Parcel No. 19182. Responsible Growth named the PUD, HiTest

Sand, and Pend Oreille County as defendants in its complaint. Responsible Growth

sought a writ of prohibition precluding the PUD's purchase and sale of the parcel.

Responsible Growth requested an order directing the PUD to return Parcel No. 19182 to

Pend Oreille County and directing HiTest Sand to return the other three parcels to the

PUD.

In its complaint, Responsible Growth alleged that Pend Oreille County PUD failed

to declare Parcel No. 19182 as surplus before selling the parcel to HiTest Sand and failed

to conduct an election of the PUD voters regarding the sale. Responsible Growth argued

that the PUD: (1) operated beyond its statutory authority in RCW 54.16.020 when it

purchased Parcel No. 19182 from Pend Oreille County, (2) operated beyond its statutory

authority in RCW 54.16.180 when it approved Resolution 1399 authorizing the sale of

Parcel No. 19182, and (3) operated beyond its statutory authority in RCW 54.16.180

when it conveyed Parcel No. 19182 to HiTest Sand in a package with three other parcels.

Pend Oreille County PUD moved for summary judgment to dismiss Responsible

Growth's causes of action. In support of its motion, the PUD filed the declarations of

Amber Orr and Colin Willenbrock. Pend Oreille County and HiTest Sand joined the

PUD's motion. In support of its joinder, HiTest argued that it was a bona fide purchaser

11

of all four parcels. In turn, Responsible Growth filed a cross motion for summary

judgment.

The trial court granted the PUD's summary judgment motion and denied

Responsible Growth's motion. In the superior court's written decision, the court noted:

> Turning then to the ultra vires issue, both the Plaintiffs and
> Defendants are requesting summary judgment based upon whether this
> Court finds the Districts actions ultra vires or not. The only evidence before
> the Court regarding the purpose of the purchase of Parcel No. 19182 is
> found in the declarations of Colin Willenbrock, General Manager of the
> PUD, and Amber Orr, Director of Engineering of the PUD. Both indicate
> the purpose was to obtain an easement for the District. There was a need
> for the easement if ownership of the parcel was to change from Pend Oreille
> County to a private entity. There is no evidence presented that controverts
> an easement was necessary for the District to continue its regular activities
> and services. The fact that the District was aware HiTest wanted to
> purchase all four parcels does not change these facts. There have been no
> facts presented that purchasing the property was outside the authority of the
> District. There has been no authority presented that makes it improper for
> the District to purchase property knowing that it was going to turn around
> and sell it in short order.

CP at 453. The trial court commented further:

> While the manner in which the District acquired and then sold Parcel
> No. 19182 was not similar to the process surrounding the other three parcels
> in question, there is no indication the District operated outside the scope of
> its authority to purchase and sell property no longer useful. The process
> surrounding Parcel No. 19182 can be described as unusual or irregular.
> Resolution 1399 from August, 2017 was entered after a public meeting was
> held. That resolution referred to the purchase, authorized by the County
> June 20, 2017, and the intent to sell all four parcels including No. 19182.
> There was no specific language referring to this parcel as surplus.

> After the resolution, the District paid the County for the parcel, then entered into a sale agreement with HiTest. The sale was complete mid August, 2017, with the deed recorded September 18, 2017. On May 15, 2018, the District ratified their previous acts to purchase Parcel No. 19182, declared it to be surplus after receiving a utility easement, and thereafter selling Parcel No. 19182 along with the three other District parcels to HiTest.

CP at 453. The trial court ruled:

> The District has the authority to purchase property, create easements, declare property to be surplus, and sell surplus property. While all of this was not done following the procedure used for the prior parcels found to be surplus, I cannot say the District acted outside it's [sic] authority and therefore its acts were ultra vires.

CP at 454. Because of this ruling, the trial court concluded that HiTest was a bona fide purchaser "entitled to presume that the proceedings leading up to the sale of the parcels were procedurally valid." CP at 454.

## LAW AND ANALYSIS

### Purchase of County Parcel

We separate for purposes of analysis, the purchase of Parcel No. 19182 by Pend Oreille County PUD from Pend Oreille County and the sale of the parcel by the PUD to HiTest Sand. Responsible Growth maintains that the PUD acted outside of its statutory authority when it acquired Parcel No. 19182 for the sole purpose of conveying it to a third party. In response, the PUD argues that the undisputed evidence shows that it purchased

13

Parcel No. 19182 for the purpose of securing a utility easement, a purpose for which a PUD may acquire real property.

Public utility districts are municipal corporations governed by statute. *Hite v. Public Utility District No. 2*, 112 Wn.2d 456, 458, 772 P.2d 481 (1989). "A municipal corporation's powers are limited to those necessarily or fairly implied in or incident to powers expressly granted by statute, and to those essential to the declared objects and purposes of the corporation." *Hite v. Public Utility District No. 2*, 112 Wn.2d at 458-59. If a municipal corporation acts in excess of its statutory authority, a complainant may challenge its action as ultra vires. *South Tacoma Way, LLC v. State*, 169 Wn.2d 118, 123, 233 P.3d 871 (2010). An ultra vires act is void on the basis that no power to act existed, even when the government entity followed proper procedural requirements. *South Tacoma Way, LLC v. State*, 169 Wn.2d at 123; *Ferlin v. Chuckanut Community Forest Park District*, 1 Wn. App. 2d 102, 108, 404 P.3d 90 (2017). Ultra vires is Latin for acting beyond one's legal authority.

We must decide whether Pend Oreille County PUD acted within its statutory powers when it purchased Parcel No. 19182 from Pend Oreille County. The Washington State Legislature authorized the creation of public utility districts in 1931. The enabling legislation declared:

14

The purpose of this act is to authorize the establishment of public utility districts to conserve the water and power resources of the State of Washington for the benefit of the people thereof, and to supply public utility service, including water and electricity for all uses.

LAWS OF 1931 ch. 1, § 1. The enabling act further proclaimed:

The rule of strict construction shall have no application to this act, but the same shall be liberally construed, in order to carry out the purposes and objects for which this act is intended.

When this act comes in conflict with any provision, limitation or restriction in any other law, this act shall govern and control.

LAWS OF 1931 ch. 1, § 11.

Chapter 54.16 RCW establishes a public utility district's powers and authority.

RCW 54.16.020 authorizes a public utility district to:

purchase, acquire, lease, add to, maintain, operate, develop, and regulate all lands, property, property rights . . . easements, [and] rights-of-way . . . *for generating electric energy* by water power, steam, or other methods.

(Emphasis added.) RCW 54.16.090 expands the grant of authority to a public utility

district:

*It may acquire by* gift, devise, bequest, lease, or *purchase, real* and personal *property* necessary or *convenient for its purposes*, or for any local district therein.

It may make contracts, employ engineers, attorneys, and other technical or professional assistance; print and publish information or literature; advertise or promote the sale and distribution of electricity or water *and do all other things necessary to carry out the provisions of this title.*

(Emphasis added.)

We confront conflicting principles as to whether to construe a public utility district's powers broadly or narrowly. On the one hand, public utility districts are municipal corporations. RCW 54.04.020; *Sundquist Homes, Inc. v. Snohomish County Public Utility District No. 1*, 140 Wn.2d 403, 410, 997 P.2d 915 (2000). Municipal authorities cannot exercise powers except those expressly granted or those necessarily implied from granted powers. *Sundquist Homes, Inc. v. Snohomish County Public Utility District No. 1*, 140 Wn.2d at 410.

On the other hand, the enabling legislation directed Washington courts to liberally construe the statutes creating public utility districts, including those statutes that grant the district powers. LAWS OF 1931 ch. 1, § 11. Furthermore, the law distinguishes between proprietary and government functions of a municipal corporation, and courts construe the powers of a municipal corporation broader when it functions in a proprietary or business manner. *Hite v. Public Utility District No. 2*, 112 Wn.2d at 459 (1989). When producing and selling electricity, a municipal corporation acts in its proprietary capacity. *Hite v. Public Utility District No. 2*, 112 Wn.2d at 459; *City of Tacoma v. Taxpayers*, 108 Wn.2d 679, 694, 743 P.2d 793 (1987); *City of Wenatchee v. Chelan County Public Utility District No. 1*, 181 Wn. App. 326, 353-54, 325 P.3d 419 (2014). Strict construction is not

16

required in the exercise of proprietary acts. *Hite v. Public Utility District No. 2*, 112 Wn.2d at 459. Thus, in the context of providing electricity and related services, the courts liberally construe a public utility district's powers. *Sundquist Homes, Inc., v. Snohomish County Public Utility District No. 1*, 140 Wn.2d at 410 (2000); *Shoulberg v. Public Utility District No. 1 of Jefferson County*, 169 Wn. App. 173, 179, 280 P.3d 491 (2012).

When acting as a private business, a municipal corporation "'is implicitly authorized to make all contracts and to engage in any undertaking which is necessary to render the system efficient and beneficial to the public.'" *Hite v. Public Utility District No. 2*, 112 Wn.2d at 460 (quoting *Puget Sound Power & Light v. Public Utility District No. 1*, 17 Wn. App. 861, 864, 565 P.2d 1221 (1997)). If a municipal utility's action comes within the purpose and object of the enabling statute and no express limitations apply, this court leaves the choice of means used in operating the utility to the discretion of municipal authorities. *Hite v. Public Utility District No. 2*, 112 Wn.2d at 463. Thus, we refuse to narrowly circumscribe the power of Pend Oreille County PUD to contract or the authority to perform acts convenient to the distribution of electricity.

Pend Oreille County PUD avows that a public utility district, based on a broad statutory grant of power, possesses authority to acquire property to secure an easement. In turn, the PUD forwards the declaration testimony of Amber Orr and Colin Willenbrock

17

for the factual proposition that the PUD acquired Parcel No. 19182 for the utility easement. We agree that the declarations support such a finding. The PUD lacked any easement across Parcel No. 19182, despite its underground transmission line being buried under the parcel or adjacent to the parcel. If Pend Oreille County sold the parcel to another party, the PUD would face the need to negotiate with the new owner to purchase an easement or condemn a slice of the parcel to obtain the easement. The negotiations or condemnation litigation could increase the costs to the PUD.

Responsible Growth contends that the record raises a question of fact as to whether Pend Oreille County PUD actually purchased Parcel No. 19182 for the purpose of selling the parcel to a third party, not for the purpose of obtaining an easement. Responsible Growth emphasizes that no record contemporaneous to the PUD's acquisition of the parcel confirms the purchase as serving the goal of obtaining an easement. The PUD adopted Resolution 1399 authorizing the purchase and sent a news release announcing the purchase without any mention of an easement. The resolution and release solely mentioned the acquisition of Parcel No. 19182 in order to sell four parcels in the aggregate to HiTest Sand.

Responsible Growth also claims that the September 18, 2017, special warranty deed for the transfer of Parcel No. 19182 by Pend Oreille County PUD to HiTest Sand

failed to reserve an easement on Parcel No. 19182. Although we agree with this contention, we disagree with the implied inference that the PUD could not have purchased Parcel No. 19182 to obtain an easement because the September 18 deed never reserved an easement in the parcel. Exhibit A to the May 14, 2018, correction deed reserved a 7.5 foot easement on the west end of Parcel No. 19182.

We agree with Responsible Growth that at least a question of fact presents itself as to whether Pend Oreille County PUD solely purchased Parcel No. 19182 for the purpose of reselling the tract to HiTest Sand. The documentary evidence surrounding the purchase suggests that the PUD wanted to combine Parcel No. 19182 with three surrounding parcels it owned and then sell the combined parcels to HiTest Sand. On September 19, 2017, Pend Oreille County PUD issued a press release regarding the sale of the land to HiTest. The press release announced that the PUD purchased the adjoining Pend Oreille County property with the intent to sell the tract to HiTest. The news release omitted any mention of any intent to purchase Parcel No. 19182 in order to retain an easement.

If we deemed the primary or only motivation behind the purchase of Parcel No. 19182 by Pend Oreille County PUD relevant to our decision, we would remand for trial the question of whether Pend Oreille County PUD purchased the real property for the

purpose of reserving an easement, for the purpose of reselling to a third party, or whether

the PUD had mixed motives. But because the purchase of the tract from Pend Oreille

County facilitated the garnering of an easement, which easement promoted the

transmission of electricity in the neighborhood, we deem this dispute of facts immaterial.

We ask whether, assuming the sale to a third party was the sole purpose behind

Pend Oreille County PUD's purchase of Parcel No. 19182, a Washington public utility

district possesses authority to purchase the real property when the purchase leads to the

immediate procurement of a utility easement. Responsible Growth focuses on the literal

language of RCW 54.16.020:

> purchase, acquire, lease, add to, maintain, operate, develop, and regulate all lands, property, property rights . . . easements, [and] rights-of-way . . . *for generating electric energy* by water power, steam, or other methods.

(Emphasis added.) Based on this language, Responsible Growth contends that the

purchase of Parcel No. 19182 must have been solely for the direct purpose of generating

electrical energy to escape the black hole of ultra viresness and that Pend Oreille County

PUD only sought to purchase the land to resell.

We recognize that in some instances the motivations behind government conduct

becomes relevant. For example, in the context of the equal protection clause, the

claimant must show some animus motivated the government entity's conduct. *State v.*

20

*Johnson*, 194 Wn. App. 304, 309, 374 P.3d 1206 (2016). But, Responsible Growth cites no case and we find no case that the motivation behind government action controls whether some act is ultra vires. The doctrine of ultra vires focuses on whether a statute authorizes a municipal corporation to perform an act, not whether the municipality performed the act with wrong intent.

Responsible Growth may concede that a public utility district holds authority to obtain an easement for a transmission line. Regardless, we so hold. In *State ex rel. Washington Water Power Co. v. Superior Court*, 8 Wn.2d 122, 111 P.2d 577 (1941), the Evergreen State high court held that a public utility district held the authority to acquire by condemnation the franchise of a private utility to use and maintain electrical lines. The public utility district could not perform its function of supplying electricity without the electrical lines and the right to use the lines.

The right of a city to acquire a water source and an easement over lands to lay its water mains and pipes is not ultra vires. *City of Springdale v. Fleming*, 191 Ark. 1058, 89 S.W.2d 602, 602-03 (1936). We see no legal distinction between this city's right and the authority of a public utility purchasing land with the result that it can reserve an easement to hang transmission lines.

Pend Oreille County PUD could not perform its function without easements entitling it to operate and maintain electrical lines. Construing the public utility district's powers liberally, the PUD held power to purchase a larger tract of land if such purchase would conveniently effectuate the reservation of the easement from a portion of the tract of land. Therefore, we conclude that the purchase of Parcel No. 19182 was not ultra vires.

We agree with Responsible Growth that the legislature created public utility districts to serve the public at large, not solely to benefit private interests. Nevertheless, nothing precludes the public utility district from benefiting private interests when the public utility district otherwise acts within its authority to serve the public.

Responsible Growth observes that Pend Oreille County, by selling Parcel No. 19182 to Pend Oreille County PUD rather than selling the parcel directly to HiTest Sand, avoided the obligation of public bidding for the sale of property. RCW 36.35.150 allows a Washington county to sell tax title property by direct negotiations, without a call for bids, when the county sells to any governmental agency for public purposes. We agree with Responsible Growth that the county averted public bidding, but this observation does not render ultra vires the purchase by the public utility district of Parcel No. 19182.

22

Responsible Growth argues that none of Pend Oreille County PUD's records, including the resolution authorizing the purchase of Parcel No. 19182, discloses intent to purchase the land in order to reserve an easement. Once again, we decline to determine the intent or intents of the public utility district. Also, Responsible Growth cites no authority that demands that a public utility district or any municipal corporation must state its intent in a resolution or board meeting minutes before purchasing land. We observe that, although the county, not the PUD, adopted the resolution, Pend Oreille County Board of Commissioner's Resolution 2017-22 observed that the public utility district inquired into the purchase of Parcel No. 19182 because it contains an easement that impacts the public utility district's operations.

### Sale to HiTest Sand

Responsible Growth next asserts that Pend Oreille County PUD's failure to obtain voter approval before its sale to HiTest rendered the transaction ultra vires because of a violation of RCW 54.16.180(1). Responsible Growth adds that the public utility district alternatively did not determine Parcel No. 19182 to be surplus until eight months after the sale, and, therefore, the public utility district again acted outside of its authority under RCW 54.16.180(2). The PUD adopted the May 15, 2018 Resolution 1411, which declared the tract surplus, months after the sale. Pend Oreille County PUD responds that

23

it only violated procedural statutory provisions and thus the sale was not ultra vires. The public utility district also highlights that RCW 54.16.180(2) does not require that sold property be declared "surplus" and the PUD corrected any defect by Resolution 1411.

RCW 54.16.180 authorizes a public utility district to sell land only after three-fifths voter approval. One exception to the vote requirement is the utility district's sale of unserviceable, inadequate, obsolete, worn out, or unfit property.

> (1) A district may sell and convey, lease, or otherwise dispose of all or any part of its works, plants, systems, utilities and properties, after proceedings and approval by the voters of the district, as provided for the lease or disposition of like properties and facilities owned by cities and towns. The affirmative vote of three-fifths of the voters voting at an election on the question of approval of a proposed sale shall be necessary to authorize such a sale.
> (2) A district may, without the approval of the voters, sell, convey, lease, or otherwise dispose of all or any part of the property owned by it that is located:
> . . . .
> (b) Within or without its boundaries, which has become unserviceable, inadequate, obsolete, worn out or unfit to be used in the operations of the system and which is no longer necessary, material to, and useful in such operations, to any person or public body.

We question whether any land is unserviceable, inadequate, obsolete, or worn out.

But we surmise that Parcel No. 19182 was unfit for use in the PUD's operations.

Pend Oreille County PUD concedes that it failed to obtain voter approval of its sale of Parcel No. 19182 to HiTest. Nevertheless, it contends Parcel No. 19182 was no longer necessary or useful and thus it needed no voter approval.

As earlier written, ultra vires acts are performed with no legal authority and are characterized as void on the basis that no power to act existed, even when proper procedural requirements are followed. *South Tacoma Way, LLC v. State*, 169 Wn.2d at 123 (2010). Conversely, acts done without strict procedural or statutory compliance are subject to a different review and often are not ultra vires. *South Tacoma Way, LLC v. State*, 169 Wn.2d at 123. Those acts may or may not be set aside depending on the circumstances involved. *South Tacoma Way, LLC v. State*, 169 Wn.2d at 123.

In *South Tacoma Way,* the Washington State Department of Transportation (DOT) sold surplus property to an abutting landowner. At the time of the sale, several private individuals owned property that bounded the land. By mistake, DOT provided no notice to the other abutting property owners, contrary to statute. Because of the mistake, DOT followed the statutory procedure for the sale of property to a single interested party, rather than the procedure applicable when multiple landowners abut a property. Shortly after the sale, one of the other abutting property owners sued to have the sale declared void. The Supreme Court rejected this claim. The court held that, because DOT was generally

25

authorized to sell surplus property, the sale was not ultra vires. Because DOT committed no substantive statutory violation, and because the procedural failure did not contravene the policy underlying the statute, the court concluded that DOT's violation of the statutory procedures did not render the contract automatically illegal and unenforceable. The Washington Supreme Court characterized the policy behind the statute violated being notice to all abutting landowners in order to prevent fraud and collusion.

In this appeal, Pend Oreille County PUD failed to follow statutory requirements found in RCW 54.16.180 before selling Parcel No. 19182 to HiTest. Nevertheless, similar to *South Tacoma Way*, the public utility district possessed general authority to dispose of land. Therefore, we must perform an analysis as to whether the statutory violations contravened the policy or policies underpinning the statute. In doing so, we distinguish the rationales behind subsection 1 of the statute and subsection 2 of the statute.

Responsible Growth asserts that two policies lie behind RCW 54.16.180(1): (1) accountability to the voters of the district, and (2) prevention of fraudulent sales by a public utility district. We recharacterize the first purpose as being resident voter's participation in the sale of property still useful to the district. We agree that a second rationale for RCW 54.16.180(1) is to prevent fraud and collusion.

Pend Oreille County PUD sold Parcel No. 19182, after an open public meeting, for more than its appraised value. The facts show no fraud. Therefore, the PUD did not breach the policy behind RCW 54.16.180(1) of inhibiting fraud.

We note that voter accountability is furthered by Pend Oreille County PUD commissioners facing voters at the next election. But we deem voter participation, not accountability to voters, more of the purpose behind RCW 54.16.180(1). Responsible Growth forwards no case that declares the failure of a government entity to submit an action to a required vote to be ultra vires. Nevertheless, voting rights are important to Washingtonians, and the PUD violated this strong public policy by selling Parcel No. 19182 without voter approval. If we deemed the tract to be useful to the PUD, we might declare the sale to HiTest ultra vires.

RCW 54.16.180(2) expresses a policy of allowing a sale of useless property without voter approval. The undisputed facts show Parcel No. 19182 to be useless to Pend Oreille County PUD once it retained an easement across the west side of the tract. The PUD confirmed the land's uselessness by a retroactive resolution. We deem the retroactive resolution to cure the failure of a vote and the late resolution to be a procedural error that violated no underlying policy behind RCW 54.16.180. The parcel at

27

all relevant times remained unfit for the PUD purposes so the late declaration caused no prejudice.

We reject the contention that the sale to HiTest of the unneeded tract was ultra vires. Because we hold Pend Oreille County PUD to be authorized to sell Parcel No. 19182 to HiTest, we decline to address HiTest Sand's argument that the court should affirm the sale to it because of its status as a bona fide purchaser.

## CONCLUSION

We affirm the superior court's dismissal of Responsible Growth's challenge to the sale of Parcel No. 19182 to HiTest Sand.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Lawrence-Berrey, J.